OPINIONS OF THE SUPREME COURT OF OHIO
        The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
        Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
        NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State of Ohio, Appellee, v. Yoder, Appellant.
The State of Ohio, Appellee, v. Grigsby, Appellant.
The State of Ohio, Appellee, v. Davidson, Appellant.
[Cite as State v. Yoder (1993),     Ohio St.3d    .]
Motor vehicles -- Driving while intoxicated -- Ohio Adm.Code
        3701-53-02(C)(2) does not require a new radio frequency
        interference survey when the breath testing device is
        moved for maintenance and repair of minor parts and is
        returned to its original testing location and replacement
        components meet specifications enumerated in Ohio Adm.Code
        3701-53-02(C)(2)(e).
Ohio Adm.Code 3701-53-02(C)(2) does not require a new RFI
        survey when the breath testing device is moved for
        maintenance and repair of minor parts and then is returned
        to its original testing location and the replacement
        components meet the specifications enumerated within Ohio
        Adm. Code 3701-53-02(C)(2)(e).  (Ohio Adm.Code 3701-53-02
        [C][2][a] and [e], construed.)
        (Nos. 92-953, 92-954 and 92-981 -- Submitted February 17,
1993 -- Decided June 23, 1993.)
        Certified by the Court of Appeals for Union County, Nos.
14-91-31, 14-91-33 and 14-91-36.
        This appeal involves three consolidated cases from Union
County.  In case Nos. 92-953 and 92-954, consolidated below,
appellants Jacob J. Yoder and Thomas G. Grigsby were convicted
for driving under the influence of alcohol.  Intoxilyzer breath
tests showed that each defendant was operating a motor vehicle
while having a prohibited amount of alcohol in his breath--
Yoder's being .159 grams of alcohol per 210 liters of breath
and Grigsby's being in excess of .10 grams of alcohol per 210
liters of breath.  Similarly, in case No. 92-981, it is
undisputed that appellant Keith W. Davidson was convicted for
driving under the influence of alcohol when his intoxilyzer
test produced a blood-alcohol content result of in excess of
.10 grams of alcohol per 210 liters of breath.  The same
intoxilyzer, housed at the Union County Sheriff's Office in
Marysville, Ohio, was used for the breath tests administered to
Davidson in March 1991, Yoder on April 28, 1991, and Grigsby on

or about May 4, 1991.

The stipulated facts reveal the following. Properly conducted radio frequency interference ("RFI") surveys were performed on this device on December 29, 1986, February 22, 1989, June 28, 1989, and May 6, 1991. Prior to the appellants' arrests and subsequent to the June 1989 RFI survey, the intoxilyzer was out of service on two occasions--January 16, 1991, and February 27, 1991--and sent to Mansfield, Ohio, for maintenance and repairs. After the work was completed, the machine was returned to and placed in its original testing site.

Appellants filed motions to suppress the blood-alcohol content test results alleging, inter alia, that the state could not show that an RFI survey was performed as required by Ohio Adm.Code 3701-53-02(C). Following a hearing by the trial court and upon the stipulations of the parties, the motions were overruled.

Thereafter, appellants entered no contest pleas. Upon appeal, in two separate opinions, the Third District Court of Appeals affirmed the convictions, 1992 WL 82518 and 1992 WL 81429, but finding its decisions to be in conflict with the decision in State v. Young (Apr. 11, 1991), Delaware App. No. 90-CA-40, unreported, 1991 WL 57176, certified the records of the cases to this court for review and final determination.

R. Larry Schneider, Union County Prosecuting Attorney, and David W. Phillips III, Assistant Prosecuting Attorney, for appellee in case Nos. 92-953 and 92-981.

John W. Dailey, Jr., for appellants Yoder and Grigsby in case Nos. 92-953 and 92-954.

Cannizzaro, Fraser & Bridges and Don W. Fraser, for appellant Davidson in case No. 92-981.

Francis E. Sweeney, Sr., J. The question presented by these appeals is whether a new radio frequency interference survey must be conducted when the intoxilyzer is removed from its testing location for service and repair, and then returned to the same site and used for testing. For the following reasons, we answer this question in the negative.

Under R.C. 4511.19(D), the General Assembly has provided that bodily substances taken to prove a violation of the driving-while-under-the influence statute "shall be analyzed in accordance with methods approved by the director of health * * *."

In addition, former R.C. 3701.1431 provides that "the director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath, * * * in order to ascertain the amount of alcohol in a person's blood." Pursuant to such statutory grant of authority, the Director of Health has approved the intoxilyzer as an instrument for testing a person's breath to measure the defendant's blood-alcohol concentration. Ohio Adm.Code 3701-53-02(A).

To achieve accurate results for breath testing devices such as the intoxilyzer, the Director of Health prescribed Ohio Adm.Code 3701-53-02(C) as amended effective May 5, 1990, which provides:

"* * * RFI surveys conducted before the effective date of

this amendment in accordance with the rule as it existed when the surveys were conducted shall remain valid until an event that would require a new RFI survey under paragraphs (C)(2) of this rule occurs." Subsection (C)(2) states that a new survey is not required unless one of the following changes occurs:

"a. The location of the breath testing instrument, when used for testing, is moved more than one foot in any direction;

"b. The instrument's axis is changed;

"c. The frequency band of the radio transmitting equipment * * * is changed;

"d. The radio transmitting equipment's rated output power is changed;

"e. Any electronic component of the instrument is changed, other than replacement of parts with original equipment replacement parts or factory-authorized replacement parts meeting the same specifications as the original equipment parts; or

"f. A new breath testing instrument is placed into service."

In dispute in the instant cases are subsections (C)(2)(a) and (e). Initially, we note the parties stipulated that the prior surveys were conducted in accordance with the Ohio Administrative Code. Thus, a valid survey had been performed, which remained valid until an event occurred which would require a new survey. As previously noted, the parties stipulated that the machine was removed for maintenance and repair and then returned to its original testing site. The question therefore becomes whether movement of the machine and the replacement of some parts is an event which would require a new test.

We interpret Ohio Adm.Code 3701-53-02 (C)(2)(a) to require a new survey when there is movement of the location of the breath testing instrument when used for testing, and not just when there is movement of the machine. This conclusion comports with the purpose of the RFI survey which is "to determine whether the environment in which the instrument operates contains electromagnetic or radio interference that may affect operation of the breath-testing instrument." (Emphasis sic.) State v. Adams (1992), 73 Ohio App.3d 735, 743, 598 N.E.2d 176, 181.

In addition, Ohio Adm.Code 3701-53-02(C)(2)(e) requires a new survey when an electronic component, other than original replacement parts or factory authorized parts meeting the same specifications as the original equipment parts, is replaced. Here, the record shows that the servicing and repairs provided on January 16 and February 27, 1991 were: replacement of a breath lamp and a pressure switch, cleaning of printer rollers and printer connectors, and checking of all voltages. The parties stipulated that the replacement components were either original equipment or factory-authorized parts meeting the same specifications as the original parts.

We conclude Ohio Adm.Code 3701-53-02(C)(2)(e) only requires a new RFI survey when any electronic component of the instrument is changed or when the part replaced is not an original or factory-authorized part. Replacement of a breath lamp and a pressure switch do not qualify as electronic component replacements. As noted, the parties stipulated the

replacement parts were either original equipment or factory-authorized parts.

Movement of the machine for maintenance and the replacement of minor parts must have been contemplated by the Director of Health.  We cannot undercut the department's rulemaking authority by requiring a new RFI test when the regulation does not require one.  The Director of Health, not the court, was delegated the discretionary authority for adoption of breath testing devices and the procedures for their use.  State v. Vega (1984), 12 Ohio St.3d 185, 189, 12 OBR 251, 255, 465 N.E.2d 1303, 1307.

We are well aware that a person charged with a violation under R.C. 4511.19 faces serious consequences solely dependent upon the results of a chemical test conducted by an instrument installed, controlled, maintained, regulated, checked and guarded by the state's law enforcement agencies.  However, in promulgating this regulation, it must be presumed that the Director of Health acted upon adequate investigation and in full awareness of the perceived problems with RFI.  We must defer to the department's authority and we may not substitute our judgment for that of the Director of Health.

For the above-stated reasons, we hold that Ohio Adm.Code 3701-53-02(C)(2) does not require a new RFI survey when the breath testing device is moved for maintenance and repair of minor parts and then is returned to its original testing location and the replacement components meet the specifications enumerated within Ohio Adm. Code 3701-53-02(C)(2)(e)

Accordingly, the judgments of the courts of appeals are affirmed.

Judgments affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Resnick and Pfeifer, JJ., concur.

Wright, J., dissents.

Footnote:
1.  R.C. 3701.143 has been amended effective April 16, 1993. The revised statute specifically refers to R.C. 4511.19 as the basis for the Director of Health's rulemaking authority.

Wright, J., dissenting.    I must respectfully dissent.  I agree with the majority that "a person charged with a violation under R.C. 4511.19 faces serious consequences solely dependent upon the results of a chemical test conducted by an instrument installed, controlled, maintained, regulated, checked and guarded by the state's law enforcement agencies."  I also agree that the Director of Health is delegated the authority to adopt regulations for the use of these instruments.  Once promulgated, these regulations are to be given the force and effect of law.  Doyle v. Ohio Bur. of Motor Vehicles (1990), 51 Ohio St.3d 46, 554 N.E.2d 97, paragraph one of the syllabus.  I disagree, however, with the majority's interpretation of Ohio Adm.Code 3701-53-02(C)(2)(a) concerning whether the Director of Health intends that an RFI survey be conducted after an instrument is moved from its testing location for maintenance and returned to that location.  Instead, I agree completely with the thoughtful dissent written by Presiding Judge Hadley in the court of appeals below.

It has been well established that breath testing

instruments such as the Intoxilyzer CM4011 used in this case can be affected by electrical interference from nearby radio transmissions. See Taylor, Drunk Driving Defense (3 Ed. 1991), Section 6.0.5. This susceptibility to radio frequency interference can result in inaccurate test results. Id. To deal with this problem, the Director of Health promulgated rules limiting the use of radio transmitting antennae during tests and requiring periodic RFI surveys.

In its analysis of Ohio Adm. Code 3701-53-02(C)(2)(a), the majority focuses on the words "location" and "used for testing" to conclude that a new RFI survey is required only when the instrument is relocated more than one foot and testing occurs in that new location. However, as Judge Hadley points out, the words "when used for testing" can be read to refer to the instrument itself, as opposed to the reason for the relocation. He cites to language in Ohio Adm.Code 3701-53-02(A) that states that "*** [i]n addition to any other purposes for which they may be used, evidential breath testing instruments are approved in determining whether an individual's breath contains a concentration of alcohol ***." Given that the regulations contemplate that these instruments may be used for purposes other than testing, this places the emphasis in subsection (C)(2)(a) on the movement of the machine more than one foot rather than the reason it is moved. Therefore, the important facts are that the instrument is used for testing and that it is moved more than one foot. The regulation does not state that the instrument can be moved and then returned to within one foot of its original location without a new RFI survey.

I believe the majority also overemphasizes that the purpose of the RFI survey is to test the environment for electromagnetic or radio interference. It is clear from the regulations that the Director of Health has determined that a new RFI survey must be conducted when certain changes occur in the environment or certain changes occur to the instrument itself that may cause radio and electromagnetic interference to affect the test results. For example, subsection (C)(2)(b) requires a new RFI survey if the axis of the instrument is changed, subsection (C)(2)(e) requires a new RFI survey if electronic components are changed other than with original replacement parts or factory-authorized parts, and subsection (C)(2)(f) requires a new RFI survey if a new machine is used. In each of these situations the environment itself has not changed. Instead, the concern is that the environment will affect the accuracy of the machine's results because of a change in the machine.

This case was certified to us by the Third Appellate District because its decision was in conflict with a decision by the Fifth Appellate District in State v. Young (Apr. 11, 1991), Delaware App. No. 90-CA-40, unreported. The Fifth Appellate District opinion was unanimous that a new RFI survey is required after a machine is removed for repair and returned to the testing location. The Third Appellate District decision that no RFI survey was required was not unanimous and our decision is not unanimous. This disparity in interpretation indicates that this regulation is at best ambiguous. Given this ambiguity and given the serious consequences dependent on

the results of these tests, it is essential that we resolve the ambiguity against the state, as we are required to do under R.C. 2901.04.

We must keep in mind that R.C. 4511.19(A)(3) is a per se offense. A defendant is found guilty if the trier of fact finds that the defendant was operating a motor vehicle and his or her intoxilyzer reading was at the proscribed level. Therefore, guilt or innocence rests on the accuracy of the test results. Newark v. Lucas (1988), 40 Ohio St. 3d 100, 532 N.E.2d 130; Defiance v. Kretz (1991), 60 Ohio St. 3d 1, 573 N.E.2d 32. Requiring a new RFI survey after a machine has been removed for repairs and returned to the test site assures certainty as to its results without placing an onerous, expensive or time-consuming burden on the testing agency. On the other hand, eliminating the requirement of a new RFI survey could compromise the accuracy of the test results. If we are to err in interpreting the regulation we should err in a way which leads to more, not less, accurate results.[2]

FOOTNOTE:

[2] In fairness, I acknowledge the Fourth Appellate District's decision in State v. Mulhern (1991), 72 Ohio App.3d 250, 594 N.E.2d 630, in which that court interpreted the predecessor to Ohio Adm.Code 3701-53-02(C), which stated: "A new survey shall be conducted when a breath testing instrument's spatial placement or axis is changed from that designated in the most recent form." In Mulhern, the state offered as an exhibit a letter from the Department of Health indicating the department's position that a new RFI survey was not required if the machine was removed for repair and returned "to the same location facing the same way." The court of appeals deferred to the department's interpretation of its regulation. While I recognize that due deference should be given to an agency's interpretation of its own regulations, I also note that there is nothing in the record before us to indicate the department's interpretation of the current regulation. Given the ambiguity of the language of the regulation, the potential for the machine to be returned from repair but not placed precisely in the exact locaton from which it was previously RFI-surveyed, and the consequences to defendants charged with per se offenses who can be convicted based solely on the results of these chemical tests, I still believe that a new RFI survey should be conducted after a machine is removed for servicing and returned to the testing site. This best assures the accuracy of the test results.