The STATE of Ohio, Appellee,

v.

HOMINSKY, Appellant.

[Cite as *State v. Hominsky* (1995), 107 Ohio App.3d 787.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 95–L–119.

Decided Dec. 18, 1995.

*Joseph M. Gurley,* Mentor-on-the-Lake Prosecutor, for appellee.

*R. Paul LaPlante,* Lake County Public Defender, and *Mark Gardner,* Assistant Public Defender, for appellant.

NADER, Judge.

This is an accelerated appeal from the judgment of the Mentor Municipal Court, entered upon a no contest plea, finding appellant, Lisa Hominsky, guilty of operating a motor vehicle with a prohibited breath-alcohol concentration in violation of R.C. 4511.19(A)(3).

On March 9, 1995, appellant was arrested and charged with driving under the influence of alcohol (R.C. 4511.19[A][1] ), driving while having a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath (R.C. 4511.19[A][3] ), and operation of a motor vehicle without reasonable control (R.C. 4511.202).

On April 5, 1995, appellant filed a motion to suppress. A hearing on this motion was held on May 17 and 19, 1995. The motion was denied.

On May 25, 1995, appellant pleaded no contest to the charge of operation with a prohibited concentration of alcohol. The other two charges were dismissed with prejudice. The court found appellant guilty of the *per se* offense and rendered sentence. The sentence was stayed pending disposition of the appeal by this court.

Appellant designates one assignment of error:

"The trial court erred to the prejudice of the defendant-appellant in overruling her motion to suppress the result of a breathalyzer test which was not conducted in compliance with Ohio Administrative Code Regulations."

Appellant sets forth four issues presented for review:

"1.  The Mentor-on-the-Lake Police failed to comply with OAC Section 3701–53–04(C) by not retaining all calibration records for their BAC Verifier for the previous three years.

"2.  The Mentor-on-the-Lake Police Department failed to perform the requisite RFI survey of the BAC Verifier machine according to OAC Section 3701–53–02(C)(2)(e) when electronic components of the machine were replaced without utilizing either original equipment or factory-authorized replacement parts.

"3.  The state failed to prove that the Mentor-on-the-Lake Police Department performed an RFI survey of the Department's BAC Verifier, in compliance with Ohio Administrative Code Section 3701–53–02(C).

"4.  The State failed to prove that Mentor–on–the–Lake Police's radio transmitting equipment's output power has not changed since installation of the Department's BAC Verifier, an event which would, pursuant to OAC Section 3701–53–02(C)(2)(d), require the performance of a new RFI survey."

Appellant claims in her sole assignment of error that the trial court erred in overruling her motion to suppress. For the reasons discussed below, this court concludes that the cumulative effect of the state's failures to demonstrate that the breathalyzer test was taken and analyzed in accordance with the Ohio Department of Health Regulations precludes a finding of substantial compliance, thereby requiring a reversal of the judgment. See *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902.

The first issue presented for review addresses whether the state satisfied its burden to demonstrate compliance with Ohio Adm.Code 3701–53–04(C), which requires all calibration records to be retained for a period of three years.

█ As a preliminary matter, we note that appellant's motion did not raise this issue with sufficient particularity. Crim.R. 47 requires that a motion to suppress state its underlying legal and factual basis with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided. *State v. Shindler* (1994), 70 Ohio St.3d 54, 636 N.E.2d 319. However, the state was not prejudiced by this failure as it was able to present all available evidence relating to this issue.

█ Ohio Adm.Code 3701–53–04 provides:

"(A) Approved evidential breath testing instruments shall be checked for calibration no less than once every seven days * * * using the calibration checklist for the instrument being checked * * *.

"(1) * * * The results of a calibration check shall be recorded on a calibration checklist. A calibration solution shall not be used more than three months after its date of first use. The date of first use for the calibration solution and its identification data shall be recorded on the calibration checklist used for that calibration check.

"(2) Results of a calibration check which are outside the range specified in paragraph (A)(1) of this rule shall be confirmed by the senior operator using another bottle of calibration solution, which may be from any approved lot. If this calibration check also is out of the range, the instrument shall be taken out of service until the problem has been corrected.

" * * *

"(C) Results of calibration checks and records of calibration, maintenance and repairs shall be identified and retained, in accordance with paragraph (A) of rule 3701–53–01 of the Administrative Code."

Ohio Adm.Code 3701–53–01(A) provides that "[t]he results of the tests shall be identified and retained for not less than three years."

Officer George Karaffa of the Mentor-on-the-Lake Police Department, a certified senior operator for BAC verifiers, testified at the suppression hearing and authenticated the records pertaining to the BAC verifier used to test appellant's breath. The evidence submitted reflects that a calibration test, identified as test No. 95–025, was performed on March 2, 1995 using bottle No. 251. The BAC verifier report form for test No. 95–025 indicated that bottle No. 251 was first used on January 26, 1995. The next calibration test contained in the record, which is identified as test No. 95–037, was performed on March 9, 1995 and used

bottle No. 660. This report form listed March 9, 1995 as the first date of use for bottle No. 660. The BAC verifier test report form marked test identification No. 95–035 recorded the results of appellant's test. This test was also performed on March 9, 1995.

Officer Karaffa testified that bottle No. 660 was substituted for bottle No. 251 because the calibration results of a test failed to measure within permissible parameters. See Ohio Adm.Code 3701–53–04(A)(1). Officer Karaffa further testified that the results of the failed calibration check were not recorded on a calibration checklist and that the records of the test were not retained as it was not the practice of the police department to keep such records of failed tests. Officer Karaffa indicated that if a calibration check failed, the calibration solution would be replaced, and that there was no instance within two years prior to March 9, 1995 in which the machine failed a second test after the solution had been replaced. See Ohio Adm.Code 3701–53–02(A)(2).

In *State v. Griffith* (Sept. 21, 1988), Summit App. No. 13551, unreported, 1988 WL 102382, the court held that the failure to record the results of all calibration tests, successful as well as unsuccessful, was grounds for suppressing the results of a Breathalyzer test. The state argued in *Griffith* that it had met its burden of proof to demonstrate substantial compliance with the regulations by the officer's testimony that there had never been more than two consecutive failures at calibration. The court indicated, however, that unless all calibration checks are recorded, the record of a particular machine may well be substantially misleading and prejudicial. *Id.* at 5. The court noted additionally that the calibration check is the primary method used to determine the accuracy of the breathalyzer and, therefore, is essential to assuring the validity of the results of an accused's test. *Id.*

Ohio Adm.Code 3701–53–04(A)(1) and (C) state in unqualified terms that results of calibration checks and records of calibration shall be identified and retained. This court concludes that compliance with these provisions requires all calibration checks to be recorded.

The second issue presented for review asserts that the state failed to prove a new RFI survey was not required by Ohio Adm.Code 3701–53–02(C)(2)(e) after electronic components were replaced within the BAC verifier.

In *State v. Bennett* (1990), 66 Ohio App.3d 595, 597, 585 N.E.2d 897, 898, this court quoted from *State v. Joles* (Feb. 5, 1988), Lake App. No. 12–171, unreported, at 3, 1988 WL 12950, for the following proposition:

" 'Before the results of alcohol tests are admissible as evidence, it is incumbent upon the state to prove the specimen was taken and analyzed in accordance with the methods and rules established by the Ohio Department of Health.' "

■ It was held in *Bennett* that the results of a Breathalyzer test must be suppressed where the state failed to introduce into evidence the most recent radio frequency interference test ("RFI survey") required by Ohio Adm.Code 3701–53–02(C). Where the issue is properly raised in a motion to suppress, the state must produce this evidence "to provide a basis to show the machine is in proper working order." *Id.*, 66 Ohio App.3d at 598, 585 N.E.2d at 899.

■ Appellant sufficiently raised the issue of the state's compliance with Ohio Adm.Code 3701–53–02(C)(2)(e) in its motion to suppress. In *State v. Shindler, supra,* 70 Ohio St.3d 54, 636 N.E.2d 319, the Supreme Court of Ohio concluded that a motion copied verbatim from a form book stated the legal and factual basis for the motion with sufficient particularity under Crim.R. 47. The allegations relating to the state's compliance with the Ohio Department of Health regulations did not contain case specific assertions of fact. Nevertheless, the court held that the defendant adequately identified the issues to be heard by specifically citing to the regulations which she believed had been violated. *Id.* at 57, 636 N.E.2d at 321–322. Appellant alleged in her motion that no new RFI survey was performed after the conditions set forth in Ohio Adm.Code 3701–53–02(C)(a) through (f) occurred. Although this court disapproves of the use of inclusive lists, we can discern no practical difference under *Shindler* between the allegation in the defendant's motion and a motion which articulates individually each occurrence listed in subparts (a) through (f) of the regulation. Moreover, appellant procured the maintenance documents pertinent to subpart (e) through discovery and introduced these documents at the hearing during the cross-examination of Officer Karaffa.

■ Ohio Adm.Code 3701–53–02(C)(2)(e) provides that a new RFI survey of a Breathalyzer machine must be performed and the results recorded when:

"Any electronic component of the instrument is changed, other than replacement of parts with original equipment replacement parts or factory authorized replacement parts meeting the same specifications as the original equipment parts * * *." See *State v. Yoder* (1993), 66 Ohio St.3d 515, 613 N.E.2d 626.

At the hearing on the motion to suppress, Officer Karaffa testified that the machine used to test appellant had been repaired on several occasions since the last RFI survey was performed in 1989. Thirteen "instrument receiving" reports, completed by the servicing company, were submitted into evidence. These reports specify the serial number of the machine being repaired, the date the machine was sent out to be serviced, a summary of the repair being performed, and a list of parts used in the repair. The reports indicate that parts which have been replaced since the last RFI survey include the "CPU power monitor." A review of the transcript of the hearing reveals that the state has presented no

evidence in satisfaction of its burden to prove that the part in question is not an electrical component.

Accordingly, it must be concluded that a new RFI survey was required unless the state demonstrated that the CPU power monitor replacement part was either (1) an original equipment replacement part, or (2) a factory-authorized replacement part meeting the same specifications as the original equipment part. See *Yoder,* 66 Ohio St.3d at 518, 613 N.E.2d at 629; *State v. Breeze* (1993), 89 Ohio App.3d 464, 475, 624 N.E.2d 1092, 1099; *State v. Baker* (Sept. 30, 1994), Clark App. No. 94 CA 0034, unreported, at 6, 1994 WL 567553.

Officer Karaffa testified that he had no personal knowledge concerning the nature of the repairs conducted on the machine or of the replaced parts, and that he was not "familiar with all these technical terms" contained in the reports of the service company. Most of the reports in evidence contain preprinted language stating that "all parts used are certified to be either factory specified original components or authorized replacement components unless otherwise indicated." But, see, *Breeze,* 89 Ohio App.3d at 474, 624 N.E.2d at 1098–1099. However, the report recording the installation of the CPU power monitor replacement unit does not contain this preprinted language. There is nothing in the report to indicate whether the replacement part was an original equipment replacement part or a factory-authorized replacement part meeting the same specifications as the original equipment part.

We conclude from the above that the state failed to demonstrate substantial compliance with Ohio Adm.Code 3701–53–02(C)(2)(e).

The third issue presented for review claims that the evidence presented at the hearing by the state failed to demonstrate compliance with Ohio Adm.Code 3701–53–02(C) and Appendix H (formerly Appendix G), which detail the procedures for conducting an RFI survey.

Initially, we note that appellant's motion to suppress raised the issue with specificity. The motion states in part:

"The breath testing instrument was not properly surveyed to determine radio frequency interference by two qualified police officers utilizing two radios and surveying from all positions the hand held, mobile, and base radios required by OAC 3701–53–02(C) and Appendix G."

In *State v. Bennett* (1990), 66 Ohio App.3d 595, 597, 585 N.E.2d 897, 898, this court quoted from *State v. Fley* (Dec. 14, 1988), Hamilton App. No. C–870811, unreported, at 4–5, 1988 WL 133000, as stating the procedural requirements for an RFI survey under Ohio Adm.Code 3701–53–02(C):

" 'The regulation requires the participation of two officers with hand radios; one officer remains at the intoxilyzer to verify the receipt of radio transmissions

and to observe the "display" readings, and the other transmits radio messages while moving from thirty feet away towards the intoxilyzer along eight specific radials.'" See, also, *State v. Trill* (1991), 66 Ohio App.3d 622, 627, 585 N.E.2d 914, 917.

The state introduced an RFI survey into evidence which included a check list on radio information and a floor plan. The RFI survey was authenticated by Officer Karaffa. See *State v. Beam* (1991), 77 Ohio App.3d 200, 206–207, 601 N.E.2d 547, 550–552. The test date for the survey is listed on the form as having been conducted on March 21, 1989. The form states that the test was performed by Patrolman J. Beckwith. Officer Karaffa testified that Patrolman Beckwith is no longer with the Mentor-on-the-Lake Police Department. He further testified that he was not present when the RFI was conducted and therefore could not affirmatively state that the test was performed by two officers.

Failure of the state to introduce into evidence the most recent RFI survey conducted in substantial compliance with the procedures set forth by the Ohio Department of Health requires suppression of the results of a breathalyzer test. *Beam,* 77 Ohio App.3d at 206, 601 N.E.2d at 550–551. The state in the instant case failed to produce satisfactory evidence that the RFI survey was performed by two officers each of whom employed a handheld radio, thereby compelling the conclusion that substantial compliance has not been demonstrated. See *State v. Harris* (June 29, 1995), Athens App. No. 94 CA 1635, unreported, 1995 WL 405004; *State v. Lyon* (Mar. 25, 1994), Ashtabula App. No. 93–A–1799, unreported, 1994 WL 102628; *State v. Lewis* (1994), 63 Ohio Misc.2d 466, 631 N.E.2d 218. Additionally, we note that a printout from the internal testing mechanism stating "no RFI present" is insufficient to satisfy Ohio Adm.Code 3701–53–02. *Bennett,* 66 Ohio App.3d at 597, 585 N.E.2d at 898.

The fourth issue presented for review asserts that the state failed to prove the police station's radio transmitting equipment's output power has not changed since the installation of the BAC verifier, an event which would require the performance of a new RFI survey pursuant to Ohio Adm.Code 3701–53–02(C)(2)(d).

As previously mentioned in relation to the second issue presented for review, appellant's motion to suppress raised generally the question whether a new RFI was conducted after any of the events listed in Ohio Adm.Code 3701–53–02(C)(2)(a) through (f) occurred. However, appellant failed to raise the instant issue during the hearing on the motion to suppress. These circumstances lead this court to conclude that the state was not required to introduce evidence specifically demonstrating the absence of an occurrence which would have required a new RFI survey. Officer Karaffa's testimony that the Breathalyzer

machine had been tested for RFI as prescribed by the Ohio Department of Health's regulations was sufficient in the absence of any specific challenge raised during the course of the hearing under Ohio Adm.Code 3702–53–02(C)(2)(d).

In sum, this court emphasizes that the nearly irrebuttable nature of the *per se* offense of R.C. 4511.19(A)(3) demands adherence to established procedures to ensure the accuracy and reliability of intoxilyzer tests. See *State v. Vega* (1984), 12 Ohio St.3d 185, 12 OBR 251, 465 N.E.2d 1303; *State v. Schell* (1984), 13 Ohio App.3d 313, 316, 13 OBR 390, 393–394, 469 N.E.2d 999, 1003.

"R.C. 4511.19 is a strict liability statute. * * * In R.C. 4511.19(A)(3) the General Assembly defined the point at which an individual can no longer drive without being a substantial danger to himself and others. * * * In determining whether the defendant committed the *per se* offense, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant's chemical test reading was at the prescribed [*sic*] level and that the defendant operated a vehicle within the state. * * * The accuracy of the test results is a critical issue in determining a defendant's guilt or innocence.

"The admissibility of test results to establish alcoholic concentration under R.C. 4511.19 turns on substantial compliance with ODH regulations. *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 462–464, 490 N.E.2d 902, 904–905." (Citations and footnote omitted.) *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32, 34.

This court concludes that the state failed to demonstrate substantial compliance with the Ohio Department of Health regulations. Accordingly, appellant's assignment of error is meritorious.

The judgment of the trial court is reversed.

*Judgment reversed.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.