HADLEY, J.
I respectfully dissent from the majority opinion's finding that the decision in Robinson is dispositive of this appeal.
The majority in Robinson properly points out that Appendix H of Ohio Adm. Code 3701-53-02 sets forth the specific procedures for conducting an RFI survey and that State v. Plummer(1986), 22 Ohio St.3d 292
states that absent a showing that the defendant has been prejudiced by a deviation in procedures, the results of an alcohol test administered in substantial compliance with the applicable regulation are admissible in a prosecution under R.C. 4511.19.
However, the majority in Robinson fails to analyze the procedure invoked by the surveying officer to see if the surveys were properly conducted either on August 10, 1993 with respect to the transmitters utilized by the jailers, or on January 28, 1997 when the increased output transmitters of the Highway Patrol were surveyed.
Appendix H states that two persons are to use two hand-held radios with one person remaining with a receiver by the BAC machine while the other person transmits with the second radio from a distance of thirty feet along eight axes.
In the Robinson case the issue of the RFI surveys was submitted to the trial court based upon the testimony previously presented in this case. A review of the testimony in this case indicates that Sgt. Branstiter participated in both the 1993 and 1997 RFI surveys. (T.p. 17, 21). When explaining the survey procedure (T.p. 19) Branstiter tells how in place of the second hand-held radio receiver, he utilized the BAC's internal RFI detector to determine if the RFI detector is operating properly in the machine.
As set forth in State v. Lavins (Apr. 25, 1989), Delaware App. No. 88-CA-35, unreported, 1989 WL 47926:
 "The State should persuade the Director of Health to rewrite his regulation if this result is desired. The purpose of the RFI survey is to `confirm' the operation of the internal detector. The purpose of the second radio is to remain with the instrument being tested to receive transmissions. Without the second radio by the machine to receive signals from the first radio, there is no way to know for sure that the radio is actually transmitting. Furthermore, since the object of the test is to determine whether the BAC Verifier's internal detector is functioning properly, it is anomalous to use the detector to test itself. If an RFI survey could be conducted accurately in that manner, we presume the Director would amend his regulations to say so. The fact that the machine aborts a test does not ensure that the BAC detector is working properly."
 In other words, the purpose of the second radio is not served by the BAC internal detector for two reasons. First, the second radio serves to test whether the other radio is active and generating radio frequency energy at the angle and direction intended, which the internal detector does not do. Second, the second radio serves to test the proper operation of the internal detector itself.
Sgt. Branstiter has indicated how he conducted the surveys. It is obvious that he utilized the BAC's internal detector to take the place of the second radio, a procedure which does not substantially comply with the provisions of Ohio Adm. Code3701-53-02, Appendix H, and therefore, in accordance with the rule of Plummer, supra, is prejudicial to the defendant.
The majority also adopts the argument of the prosecution that the original motion to suppress did not specifically address the usage of just one radio but rather the motion challenged the survey solely on the claim that the officers failed to test the correct frequency bands when performing the January, 1997 survey.
The prosecution did not object to the motion to suppress nor did it ask for additional time in which to produce further evidence.
The motion pointed out that the RFI survey did not comply with the requirements of the Ohio Adm. Code section 3701-53-02(C) in that the officer testing for radio frequency interference failed to test all radios. Therefore, the motion did contain the particularity required by Crim.R. 47 and Xenia v. Wallace (1988),37 Ohio St.3d 216, and there was thus no waiver of the claim. SeeState v. Hominsky (l995), 107 Ohio App.3d 787 ("[T]he state was not prejudiced by this failure [of the defendant to state with sufficient particularity the underlying legal and factual basis] as [the state] was able to present all available evidence relating to this issue.") Additionally, even if Clark's motion to suppress was defective, the state's "failure to object to an unsupported and defective motion will result in waiver of that defect." Statev. Cartledge (l991), 76 Ohio App.3d 145, 148; Xenia, supra at 221.
The balance of the challenge developed as the officertestified in response to the question as to how he conducted the test. (T.p. 19). There was no surprise on the part of the prosecution as a result of a lack of particularity of the motion and no unfairness resulted as there were no other officers to testify as to how the test was conducted.
The results of the test should be suppressed.