On March 25, 1997, David Hamad was arrested and charged with three violations of the traffic ordinances of the city of Reynoldsburg: reckless operation of a motor vehicle; a "traditional/impaired" violation of operating a motor vehicle while under the influence ("OMVI"); a "per se" violation of OMVI, having breath test results of .152%, indicating a proscribed breath-alcohol concentration. Upon his filing a jury demand, Mr. Hamad's case was transferred from the Reynoldsburg Mayor's Court to the Franklin County Municipal Court.
Defense counsel filed a motion to suppress the results of Mr. Hamad's breath test. Following an evidentiary hearing conducted in October 1997, the trial court ultimately overruled the motion to suppress, pursuant to an entry journalized April 16, 1998. The evidence adduced at the hearing is addressed below in our discussion of the first assignment of error.
Mr. Hamad subsequently entered a plea of no contest to theper se OMVI charge and the remaining charges were dismissed. The trial court found him guilty and sentenced him to 180 days in jail, suspending 177 days and allowing three days for attendance at an approved alcohol education program. The court also imposed a 180-day suspension of Mr. Hamad's driver's license, with fifteen days credited for pretrial suspension. Further, the court placed Mr. Hamad on two years' probation, fined him $300, and ordered him to pay court costs. The sentencing entry was journalized April 21, 1998.
David Hamad (hereinafter "appellant") has timely appealed the disposition of the suppression motion and the sentence imposed upon him, assigning three errors for our consideration:
"ASSIGNMENT OF ERROR NO. 1:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING DEFENDANT-APPELLANTS MOTION TO SUPPRESS.
 "ASSIGNMENT OF ERROR NO. 2:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN PERMITTING THE CITY TO OFFER INADMISSIBLE EVIDENCE OVER OBJECTION WHICH WAS CRUCIAL TO DETERMINATION OF THE MOTION.
 "ASSIGNMENT OF ERROR NO. 3:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT GIVING THE DEFENDANT-APPELLANT CREDIT FOR THE TIME HIS LICENSE WAS UNDER SUSPENSION PENDING THE TRIAL OF THIS ACTION AND IMPOSING A MAXIMUM SENTENCE OF SIX (6) MONTHS FOR A FIRST OFFENDER WHO DID NOT CAUSE AN ACCIDENT OR ENDANGER ANYONE'S SAFETY."
By his first assignment of error, appellant argues that the trial court erred in overruling his motion to suppress the results of the breath test. The bases of the suppression motion were purported failures to comply with certain regulations promulgated by the Ohio Department of Health ("ODH"), pursuant to R.C. Chapter 119 and Ohio Adm. Code Chapter 3701-53. Appellant contends that the state failed to satisfy its burden to prove that the test results are reliable because law enforcement personnel did not act in compliance with certain mandatory procedures in administering the test and, further, that the machine itself was not demonstrated to be in compliance.
Appellant claims that the prosecution failed to establish at least four specific instances of compliance with the regulations: (1) the operator of the breath-testing instrument, the "BAC Datamaster," was not shown to have observed appellant for the requisite twenty minutes prior to administering the test; (2) the operator of the machine was not shown to be a "qualified senior operator" in April 1995 when a prior radio frequency interference ("RFI") survey was performed; (3) that this 1995 RFI survey itself was not shown to be properly performed; and (4) that appellant's March 1997 test results are unreliable because no new RFI survey was performed after the machine was sent to Mansfield, Ohio, for repairs and then returned to the station prior to appellant's arrest. Additionally, appellant contends that the record establishes that the repairs may have been conducted with parts which may not have been regulation.
Initially, we note that, on a pretrial motion to suppress the test results, the prosecution has the burden of proving that the test was conducted in accordance with law. The trial court should admit the test results into evidence if the prosecution can demonstrate "substantial compliance" with the ODH regulations. State v. Perry (1996), 108 Ohio App.3d 709,712-713, discretionary appeal not allowed in (1996), 76 Ohio St.3d 1419, citing State v. Mays (1992), 83 Ohio App.3d 610,612, and State v. Plummer (1986), 22 Ohio St.3d 292. In addition, when a defendant properly raises an RFI-related issue in a motion to suppress, the prosecution bears the further burden of producing evidence demonstrating that the breath-testing machine was in proper working order at all relevant times. State v. Hominsky (1995), 107 Ohio App.3d 787,792-793, citing State v. Bennett (1990), 66 Ohio App.3d 595,597.
We turn first to appellants claims that the test results should be deemed inadmissible because of the state's purported failure to demonstrate that appellant was observed for twenty minutes prior to taking the test. We reject this contention, as there is evidence of substantial compliance with the observational requirement. There is sufficient testimony in the record to demonstrate that appellant was continually observed prior to the test by the arresting officer, Mindy Harp, and Officer Albert Grundy for at least the minimum twenty minutes, either individually or "tacking" one's observation period onto the continual period of the other. SeeBolivar v. Dick (1996), 76 Ohio St.3d 216.
We similarly reject appellant's contentions regarding the prosecution's purported failure to establish that the person who conducted the 1995 test was a "qualified senior operator" as required by Ohio Adm. Code 3701-53-02(C). Sergeant Jerry Ault, the officer who conducted the 1995 test, testified that he held a valid certificate indicating his "senior operator" status for the time period in question, although the only certificate he had at trial covered the current time frame from December 1995 to December 1997. Although he did not produce his certificate for the April 1995 time period, we do not find error in the trial court's finding that this testimony satisfied the "substantial compliance" standard.
We are more troubled by the actual 1995 test itself. Appellant contends that the prosecution failed to prove that this RFI survey was properly performed even under a substantial compliance standard. We agree.
The purpose of an RFI survey is to determine if there is any interference from radios transmitting within thirty feet of the breath-testing instrument. Pursuant to requirements of Ohio Adm. Code 3701-53-02(C), where radios are capable of multiple band transmission, a separate RFI survey must be performed for each of three radio bands: high frequency, very high frequency, and ultra high frequency. State v. Koch (1996),108 Ohio App.3d 572; State v. Owen (1996), 114 Ohio App.3d 226. Officer Ault testified that he surveyed only two bands and, more significantly, was not sure he surveyed the bands for new radios acquired by the city in 1996. The officer ultimately conceded that no new survey was conducted after the new radios were acquired.
Exacerbating the problem with the 1995 test is what the record fails to establish regarding the repairs made thereafter. Specifically, we turn now to appellant's claim that the test results should be invalidated because no new RFI survey was conducted after the machine was removed from its original location, sent to Mansfield, Ohio, for repairs, and then returned to the police station. Further, the prosecution failed to establish that the repairs were conducted with the parts approved by the regulations.
The ODH regulations require that a new RFI survey be conducted following certain enumerated events. Specifically, Ohio Adm. Code 3701-53-03(C)(2) mandates that a new RFI survey shall be conducted when:
 "(a) The location of the breath testing instrument, when used for testing, is moved more than one foot in any direction;
"(b) The instruments axis is changed;
 "(c) The frequency band of the radio transmitting equipment ["high frequency/HV," "very high frequency/VHF," or "ultra high frequency/UHV"] * * * is changed;
 "(d) The radio transmitting equipment's rated output power is changed;
 "(e) Any electronic component of the instrument is changed, other than replacement of parts with original equipment replacement parts or factory authorized replacement parts meeting the same specifications as the original equipment parts; or
 "(f) A new breath testing instrument is placed into service."
Preliminarily, there is no dispute that a new RFI survey was not conducted following the machine being moved from its original site, sent to Mansfield, Ohio, for repairs, and then purportedly returned to its original position upon its return. Since there was some testimony to the effect that the machine was placed exactly where it had been before, we reject the argument narrowly addressed to the actual movement of the machine itself. See State v. Yoder (1993), 66 Ohio St.3d 515, and State v. Thom (1993), 67 Ohio St.3d 571.
We look further to Yoder for guidance in reviewing appellant's more substantive arguments pertaining to the repairs in general, and the replacement parts in particular. InYoder, the court held, at the syllabus:
 "Ohio Adm. Code 3701-53-02(C)(2) does not require a new RFI survey when the breath testing device is moved for maintenance and repair of minor parts and then is returned to its original testing location and the replacement components meet the specifications enumerated within Ohio Adm. Code 3701-53-02(C)(2)(e). (Ohio Adm. Code 3701-53-02[C][2][a] and [e], construed.)"
The prosecution called as its first witness John D. Fusco, the president of National Patent Analytical Systems, the manufacturer of the BAC Datamaster. Mr. Fusco's testimony was based solely upon his review of records regarding the repairs. He testified that although he had not personally repaired the machine or otherwise been involved, the repairs would have to have been conducted in accordance with the company's specifications and with factory-authorized replacement parts. Essentially, his testimony amounts to an assumption that a technician performed the repairs properly and with factory parts meeting the manufacturers' specifications.
Mr. Fusco also assumed that the technician calibrated the machine before being returned to the Reynoldsburg police station. Because he did not bring "those records" with him, Mr. Fusco could not offer any details regarding the required calibration which he "believed" was conducted. Mr. Fusco conceded that he simply did not know any details regarding the specifics of the calibration, again assuming that a calibration was conducted. This witness's lack of any personal knowledge regarding the repairs renders his testimony of minimal, if any, value and fails to establish "substantial compliance." See State v. Breeze (1993), 89 Ohio App.3d 464;Hominsky, supra.
Notwithstanding the prosecution's failure to demonstrate compliance with vital aspects of the 1995 testing procedure, and the lack of evidence regarding details of the subsequent repairs, the trial court summarily concluded that appellant's 1997 test was performed in "substantial compliance" with the ODH regulations, pursuant to Plummer, supra. We disagree.
Given the circumstances of this test in its entirety, the prosecution's evidentiary failures do not amount to "minor deviations' from the regulations as contemplated byPlummer. As detailed above, our review of the record reveals that the state did not meet its burden of demonstrating even substantial compliance with significant ODH regulations. As directed by Plummer, we are not hair-splitting by demanding rigid compliance with the regulations. The prosecution simply did not present sufficient evidence which establishes the requisite degree of reliability in the test results. Accordingly, the trial court erred in overruling the motion to suppress.
The first assignment of error is sustained.
Our disposition of the first assignment of error renders the second and third assignments of error moot. See App.R. 12(A).
Having sustained the first assignment of error, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
PETREE and KENNEDY, JJ., concur.