DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Sylvania Municipal Court. There, after entering a no contest plea, appellant was found guilty of violating R.C. 4511.19(A)(6). Because we conclude that sufficient evidence was presented in support of her conviction (even though the results of appellant's field sobriety tests should have been suppressed), we affirm the judgment of the trial court.
 {¶ 2} Appellant, Aimee Faykosh, was arrested and charged with operating a motor vehicle while under the influence ("DUI") in violation of R.C. 4511.19(A)(1) and R.C. 4511.19(A)(6). Appellant moved the court to suppress the results of field sobriety tests and the results of her breath test. Appellant also requested that she be permitted to challenge the general reliability of breath testing. Appellee, the state of Ohio, opposed these motions and moved that appellant bear the burden of proof as to her allegation that the Director of Health abused his discretion in accepting breath testing as a valid form of blood-alcohol level detection.
 {¶ 3} At the suppression hearing, the following evidence and testimony was presented. On September 13, 2000, at 1:55 a.m., Sergeant Matthew L. Evans of the Ohio State Highway Patrol, observed appellant driving her motor vehicle on a local roadway. Appellant appeared to begin a right-hand turn into a gas station, but then veered left back into the street. This area of the roadway was under construction and was partially blocked by orange barrels. According to Sergeant Evans, appellant drove slowly into the closed off construction area to an entrance ramp and onto an interstate expressway. Appellant did not strike any of the barrels or construction equipment as she drove through this area.
 {¶ 4} Sergeant Evans followed appellant as she drove on the interstate, eventually pulling her over. The trooper approached the vehicle and appellant rolled down her window. Sergeant Evans testified that he then detected a very strong odor of alcoholic beverage coming from inside the vehicle. He asked appellant for her license, which she produced without undue delay. He also engaged her in conversation and noted that her eyes were glassy-looking and bloodshot. Sergeant Evans performed the horizontal gaze nystagmus test while appellant was seated in her vehicle. He stated that he held the stimulus roughly 14 inches from appellant's nose while he performed the test.
 {¶ 5} The trooper then had appellant exit her vehicle, and he administered a second horizontal nystagmus test. The trooper completed the test, but performed the three steps of the test out of the normal sequence.
 {¶ 6} Upon inquiry by Sergeant Evans, appellant informed him that she had problems with her right knee. The trooper then demonstrated and had appellant perform the one-legged stand test using her left leg. Appellant stood on a "slightly" downhill inclined area and attempted to perform the one-legged test. Sergeant Evans testified that during the thirty seconds of the test, appellant swayed, put her foot down one time and raised her arm greater than 6 inches from her side to maintain her balance.
 {¶ 7} Sergeant Evans then had appellant perform the walk and turn test. He used a quarter inch wide gouge in the pavement that appeared to be straight. Appellant did not walk touching her heel to toe within the required spacing and stepped off the line twelve times. She also did not pivot as the trooper demonstrated, and she lost her balance as she was turning.
 {¶ 8} Sergeant Evans then arrested appellant, read her Miranda rights, handcuffed her behind her back, and placed her in the back seat of his cruiser. Appellant was transported to a local patrol post where she ultimately submitted to a breath test. The test results indicated .179 grams of alcohol by weight per 210 liters of breath. Appellant was cited for a violation of R.C. 4511.19(A)(6).
 {¶ 9} Appellant initially pled not guilty and moved to suppress the use of the sobriety tests and breath test results. Appellant also sought, via a motion in limine, to prevent the state's introduction of expert testimony as to the validity of the sobriety tests. At the suppression hearing, appellant proffered a transcript of expert testimony by Dr. Craig Sutheimer, a former Deputy Director of Health, given at a pretrial hearing in a case held two years prior to appellant's proceedings. Appellant sought to challenge the validity of the results of her breath test. The court ultimately denied appellant's motions to suppress and motion in limine, ruling that Dr. Sutheimer's transcript testimony was inadmissible for the purposes of the suppression hearing. The court granted the state's motion as to appellant's burden of proof concerning the Director of Health's alleged abuse of discretion actions.
 {¶ 10} Appellant then changed her plea to no contest and was found guilty of a violation of R.C. 4511.19(A)(6).
 {¶ 11} Appellant now appeals from that conviction, setting forth the following four assignments of error:
 {¶ 12} "Assignment of Error No. 1
 {¶ 13} The trial court committed reversible error by striking the testimony of Dr. Craig Sutheimer proffered by the appellant in support of her motions to suppress and in limine.
 {¶ 14} "Assignment of Error No. 2
 {¶ 15} The trial court committed reversible error by denying the appellant's motions to suppress No. 1 and No. 2.
 {¶ 16} "Assignment of Error No. 3
 {¶ 17} The trial court committed reversible error by permitting the state to elicit testimony from Dr. Robert Forney.
 {¶ 18} "Assignment of Error No. 4
 {¶ 19} The trial court committed reversible error by denying the appellant's motion to attack the reliability of her breath test for alcohol."
 I. {¶ 20} Appellant, in her first assignment of error, argues that the trial court erred in striking the transcript testimony of Dr. Sutheimer which was proffered in support of her motions to suppress and in limine.
 {¶ 21} Evid.R. 104(A)provides:
 {¶ 22} "(A) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (B). In making its determination it is not bound by the rules of evidence except those with respect to privileges."
 {¶ 23} At a suppression hearing, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." United States v. Raddatz (1980), 447 U.S. 667, 679. Thus, Evid.R. 104(A) gives the trial judge broad discretion concerning the admissibility of evidence presented in a suppression hearing. State v.Woodring (1989), 63 Ohio App.3d 79, 81.
 {¶ 24} In this case, the trial court determined that the transcript of Dr. Sutheimer's testimony from a suppression hearing in a two-year-old unrelated case from another county was not admissible in the current proceedings. In our view, nothing was offered to demonstrate that the information provided by the transcript still represents Dr. Sutheimer's current views. Appellant's argument that since Dr. Sutheimer's testimony was presented by the state in the previous case, "the state" had an opportunity to cross-examine Dr. Sutheimer is without merit. Under appellant's reasoning, once an expert testified in a case, a party could use that testimony in any other case without further documentation or validation. This is not correct.
 {¶ 25} Therefore, we cannot say that the trial court abused its discretion in finding Dr. Sutheimer's transcript testimony inadmissible.
 {¶ 26} Accordingly, appellant's first assignment of error is not well-taken.
 II. {¶ 27} We will next address appellant's third assignment of error, in which she argues that the expert testimony of Dr. Robert Forney as to the validity of the field sobriety tests should have been excluded.[1]
 {¶ 28} In State v. Homan (2000), 89 Ohio St.3d 421, paragraph one of the syllabus, the Supreme Court of Ohio held that field sobriety tests not conducted in strict compliance with established methods and procedures should be suppressed. While law enforcement agencies may not agree with the strict standard for the admission of sobriety test results imposed by Homan, this court is charged with accepting and enforcing the law promulgated by the Supreme Court of Ohio, and may not change, modify or ignore that law. See City v. Duling, (Mar. 31, 1997), Franklin App. No. 96APC07-859, citing to Consolidated Rail Corp. v. Forest Cartage Co.
(1990), 68 Ohio App.3d 333, 341; Thacker v. Bd. of Trustees of Ohio StateUniv. (1971), 31 Ohio App.2d 17, paragraph one of the syllabus, overruled in part on other grounds.
 {¶ 29} In this case, evidence was presented that the field sobriety tests were not performed in strict compliance with NHTSA standards. The horizontal gaze nystagmus test was performed out of order and the other two tests were performed on a downhill incline, instead of a level area. In addition, appellant was directed to perform the walk and turn test at night using a quarter inch wide gouge, source unknown, in the pavement as the "straight" line, arguably not easily seen. Therefore, we conclude that the tests were not performed in strict compliance with the applicable standards.
 {¶ 30} Dr. Forney, although an expert in toxicology, was not an expert in the administration of field sobriety tests. His testimony was presented to show that, despite the non-compliance with NHTSA standards, appellant's field sobriety tests should not be suppressed because they were still valid indicators of her impairment. In our view, the admission of his testimony was an attempt to circumvent the holding inHoman. Therefore, we conclude that Dr. Forney's testimony should have been excluded since it was irrelevant to whether or not the field sobriety tests were conducted in compliance with NHTSA standards.
 {¶ 31} Accordingly, appellant's third assignment of error is well-taken.
 III. {¶ 32} We will next address appellant's fourth assignment of error. Appellant claims that the trial court erred in denying the admission of certain evidence at the suppression hearing as to the general reliability of breath testing.
 {¶ 33} The use of chemical testing procedures in drunk-driving cases is widely accepted by courts. State v. Hochhausler,76 Ohio St.3d 455, 462. The tests have been generally recognized for over 27 years as being reasonably reliable when conducted with proper equipment and by competent operators. Id.
 {¶ 34} Proof and testing are now mainly controlled by statute. See State v. Vega (1984), 12 Ohio St.3d 185. Issues concerning the general reliability of tests and the relation between blood alcohol levels and driver impairment have been answered by the legislature through its statutes. A challenge to the general reliability of breath testing instruments fails to "afford the legislative determination that intoxilyzer tests are proper detective devices the respect it deserves," since by enacting statutes such as R.C. 4511.19, the legislature resolved the question of the reliability and relevancy of intoxilyzer tests.Vega, supra, at 188.
 {¶ 35} In this case, based upon the holding of Vega, the trial court did not err in denying appellant's motion to present evidence as to the general reliability of the breath machine and test itself.
 {¶ 36} Accordingly, appellant's fourth assignment of error is not well-taken.
 IV. {¶ 37} Appellant, in her second assignment of error, contends that the trial court erred in denying her motions to suppress the results of the breath test and the field sobriety tests.
 {¶ 38} At a hearing on a motion to suppress, a trial court functioning as the trier of fact, is in the best position to evaluate the evidence, judge the credibility of the witnesses, and resolve the factual issues. State v. Mills (1992), 62 Ohio St.3d 357, 366. When reviewing a trial court's ruling on a motion to suppress, an appellate court is bound to accept the trial court's factual determinations if they are supported by competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741; State v. Williams (1993), 86 Ohio App.3d 37,41. Once an appellate court accepts the trial court's factual determinations as true, the appellate court must conduct a de novo review of the trial court's application of the law to those facts. Searls, supra.
 {¶ 39} Appellant first contends that the twenty minute observation period prior to appellant's breath test was not properly performed. The sole purpose of the twenty minute observation period is to prevent the oral intake of any material. Bolivar v. Dick (1996), 76 Ohio St.3d 216,218; State v. Steele (1977), 52 Ohio St.2d 187. A witness who testifies to that foundational fact is not required to show that the subject was constantly within his view. State v. Adams (1992) 73 Ohio App.3d 735,740. Rather, it is necessary to establish only that during the twenty minute period the subject was kept in such a location that the subject's ingestion of any material without the knowledge of the witness is unlikely or improbable. Id. "To overcome that inference, the accused must then show that he or she did, in fact, ingest some material during the twenty-minute period." Id. The mere ascertainment "that ingestion was hypothetically possible ought not to vitiate the observation period foundational fact so as to render the breathalyzer test results inadmissible." Id. citing to Steele, supra, at 192.
 {¶ 40} In this case, the officer testified that during the twenty minute observation period, appellant was handcuffed behind her back while riding in the patrol car or was within full view of police personnel. Appellant suggests that the purpose of the observation rule is to observe her for burping or other evidence that might impact on the breath test. Even if this were a function of the observation rule, which it is not, appellant offered no evidence that she did, in fact, ingest any material or that other body functions impaired her ability to properly perform the breath test. Therefore, the trial court did not err in overruling appellant's motion on the basis of improper administration.
 {¶ 41} Appellant also argues that the results of the breath test should have been suppressed because the Director of Health abused his discretion in finding that the breath test procedures yield valid reliable indications of the amount of alcoholic beverage in a person's system. The Director of Health, not the courts, is delegated the discretionary authority to adopt regulations and procedures for the use of breath testing instruments. State v. Yoder, 66 Ohio St.3d 515, 518;State v. Vega (1984), 12 Ohio St.3d 185, 189. Once enacted, these regulations are to be given the force and effect of law. Doyle v. OhioBur. of Motor Vehicles (1990), 51 Ohio St.3d 46, paragraph one of the syllabus. Furthermore, in "promulgating the regulations and procedures regarding breath testing, we must presume that the Director of Health acted upon adequate investigation and in full awareness" of any problems with such procedures or machines. See State v. Yoder, supra. A court must defer to the department's authority and may not substitute its own judgment for that of the Director of Health. Id.
 {¶ 42} In this case, we have already determined that appellant failed to properly submit evidence relevant to her argument that the Director of Health abused his discretion. Therefore, the trial court did not err in denying appellant's motion to suppress the breath test results based upon the general reliability of breath testing.
 {¶ 43} Moving now to appellant's second motion to suppress, we have already determined that the results of the sobriety tests should have been suppressed on the authority of State v. Homan, supra. However, this does not affect the ultimate outcome of appellant's case. Probable cause to arrest may be found even in the absence of admissible field sobriety tests. Homan, supra. Probable cause to believe a person is operating a vehicle while under the influence of alcohol arises from readily discernible indicia based upon the totality of the circumstances. State v. Gustafson (1996), 76 Ohio St.3d 425, 450. Even where field sobriety test results have been excluded for failure to comply with test guidelines, other facts and circumstances may support the officer's probable cause determination. See State v. Homan (2000),89 Ohio St.3d 421; accord, State v. Winn (Dec. 4, 2001), Mahoning App. No. 00CA229 and Cincinnati v. Jacobs (Dec. 14, 2001), Hamilton App. Nos. C-010279, C-010280, C-010281.
 {¶ 44} When determining if probable cause exists to justify a DUI arrest, the trial court should consider whether at the moment of arrest the officer had sufficient information, based on reasonably trustworthy facts and circumstances, to cause a prudent person to believe that the suspect was driving under the influence of alcohol or drugs. State v.Homan, supra at 427, citing, Beck v. Ohio (1963), 379 U.S. 89.
 {¶ 45} In this case, the trooper saw appellant driving somewhat erratically, first changing her direction without apparent reason and then driving slowly in a marked closed-off construction lane. Upon stopping her, he then observed that appellant's eyes were red and glassy and he smelled a strong odor of alcoholic beverage on her breath. Therefore, excluding the sobriety tests, the trooper had probable cause to arrest appellant and conduct the breath test which resulted in her conviction. Consequently, the admission of the sobriety tests is harmless error, since appellant pled no contest to R.C. 4511.19(A)(6), i.e., having a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath.
 {¶ 46} Accordingly, appellant's second assignment of error is well-taken as to the motion to suppress the sobriety tests, but not well-taken as to the suppression of the breath test results.
 {¶ 47} The judgment of the Sylvania Municipal Court is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., James R. Sherck, J. and Mark L. Pietrykowski,P.J. CONCUR.
[1] Four other parties were permitted to file amicus curiae briefs regarding this issue: The Attorney General of Ohio, Mothers Against Drunk Driving, the Ohio Prosecuting Attorney's Association, and the Ohio Association of Chiefs of Police.