DECISION
{¶ 1} Pursuant to Crim.R. 12(K) and App.R. 4(B)(4), plaintiff-appellant, State of Ohio ("appellant") appeals from the April 12, 2005 judgment of the Franklin County Municipal Court in which that court granted the motion to suppress the results of a BAC Datamaster breath test in this prosecution of defendant-appellee, James D. Luke ("appellee") for operating a vehicle under the influence of alcohol ("OVI impaired") and for operating a vehicle with a per se prohibited concentration of blood alcohol ("OVI per se").
 {¶ 2} At approximately 1:57 a.m. on January 26, 2005, Ohio State Highway Patrol Trooper Brian Alloy initiated a stop of appellee's vehicle as it was traveling on Dublin-Granville Road in Perry Township in Franklin County. Upon investigating, Trooper Alloy determined that there was probable cause to believe that appellee was operating his vehicle while under the influence of alcohol, and arrested appellee for a violation of R.C.4511.19(A)(1)(a), OVI impaired.
 {¶ 3} Following his arrest, appellee agreed to take a BAC Datamaster breath test to determine his blood alcohol content. The test result indicated that the sample appellee provided contained .118 grams of alcohol per 210 liters of breath. Thereafter, appellee was additionally charged with a violation of R.C. 4511.19(A)(1)(d), OVI per se. Appellee was also charged with marked lanes and safety belt violations.
 {¶ 4} After appellee was arraigned and entered a not guilty plea, he filed a motion to suppress the results of the BAC Datamaster test. Therein, he argued that law enforcement officers failed to administer the test in compliance with applicable portions of the Ohio Revised Code and the Ohio Administrative Code.
 {¶ 5} On April 5, 2005, the court held a hearing on the motion. Trooper Alloy testified first. The parties agreed that he holds a valid senior operator permit under which he administers BAC Datamaster tests. He told the court that he observed appellee for at least 20 minutes prior to administering the BAC Datamaster test. At 2:45 a.m., the first attempt at testing appellee's breath resulted in an invalid sample. Trooper Alloy testified that the machine purged the first sample of breath while Trooper Alloy waited for an additional 20 minutes, whereupon he conducted another test. At 3:08 a.m., the second test yielded a result of .118.
 {¶ 6} The parties stipulated that the BAC Datamaster used to conduct appellee's test was checked on January 19, 2005, using properly calibrated instrument check solution approved by the Director of the Ohio Department of Health. The results of this check were within approved limits, and the machine was in good working order on that date.
 {¶ 7} Ohio State Highway Patrol Sergeant Alice Parks also testified. Sergeant Parks performed the instrument check of the machine in question on January 19, 2005. She also performed an instrument check of the same machine on January 26, 2005. She testified that both checks yielded results that deviated from the target value of the calibration solution by an acceptable amount. Sergeant Parks testified that nothing about the January 19th and January 26th instrument checks indicated to her that the machine was malfunctioning in any way. She also testified that if a BAC Datamaster machine is not working properly the machine will not operate at all or it will give an "error code" on a printed sheet.
 {¶ 8} On cross-examination Sergeant Parks testified that the machine in question was taken out of service on January 28, 2005, because it displayed an "Error Code 24" message, and was sent to the Mansfield, Ohio manufacturer of the machine for service. Sergeant Parks was aware that the manufacturer did perform some sort of work on the machine but did not know any details as to the type of work performed. She also acknowledged that if the internal mechanism within the machine that detects testing malfunction was itself malfunctioning, then the machine would fail to notify an officer that the machine was not in good working order with respect to testing a suspect such as appellee.
 {¶ 9} The trial court granted the motion to suppress the results of appellee's BAC Datamaster breath test. In its April 12, 2005 entry the court explained that it was suppressing the test result "pursuant to the court's `gatekeeper' function, pursuant to the authority of Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579 [113 S.Ct. 2786,125 L.Ed.2d 469]." The court went on to make the following conclusions:
The court must have a reasonable degree of certainty that the BAC test results that it is instructing a jury to consider are indeed accurate. This is especially significant in pretrial motions because of the limitations that are placed on the challenges to the general reliability of intoxilyzers. Given the two unexplained "error" readings given by the machine, the unknown effect of the repairs and updates on the defendant's test results; this court is not satisfied that the BAC test results are "sufficiently reliable so that it will aid the jury in reaching accurate results." Miller [v. Bike Athletic Co.
(1998), 80 Ohio St.3d 607] at 612.
Under the circumstances presented in this case, the court finds that the defendant has demonstrated that prejudice will result if the results of this BAC test administered on January 26, 2005 are admitted into evidence.
(April 12, 2005 Entry, at 3.)
 {¶ 10} Appellant timely appealed and presents a single assignment of error for our review:
THE TRIAL COURT ERRED IN FINDING THAT DAUBERT V. MERRILL [SIC]DOW PHARMACEUTICALS, INC., BARRED THE ADMISSION OF A CHEMICAL BREATH TEST RESULT OBTAINED ON A PROPERLY FUNCTIONING AND APPROVED BREATH TESTING DEVICE.
 {¶ 11} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact."State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, quoting State v. Fanning (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583. As such, the reviewing court must accept the trial court's findings of fact if the same are supported by competent, credible evidence. State v. Pena, 10th Dist. No. 03AP-174, 2004-Ohio-350, at ¶ 7.
 {¶ 12} Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.
 {¶ 13} Finally, assuming the trial court's findings of fact are supported by competent, credible evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Pingor (Nov. 20, 2001), 10th Dist. No. 01AP-302; State v.Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906.
 {¶ 14} In the instant appeal, appellant challenges the trial court's ruling based on the second and third methods. Appellant challenges both the trial court's application of the Daubert
case to the facts and the trial court's ultimate conclusion that the test result obtained in this case is so unreliable that it would be prejudicial to admit it at trial.
 {¶ 15} In support of its assignment of error, appellant argues that the trial court misapplied the cases of Daubert v.Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579,113 S.Ct. 2786, 125 L.Ed. 469, and its Ohio progeny, Miller v. BikeAthletic Co. (1998), 80 Ohio St.3d 607, 687 N.E.2d 735.
 {¶ 16} According to appellant, a Daubert challenge is limited to the question whether expert testimony is based upon scientifically valid principles, and does not involve the reliability of the specific test result that a party offers as substantive evidence to sustain its burden of proof. As such, appellant argues, Daubert has nothing to do with issues surrounding the particular BAC test result sought to be admitted, such as whether mechanical difficulties and maintenance performed several days after the test in question cast doubt on whether the particular machine used to test appellee was in good working order on the date of appellee's test.
 {¶ 17} Appellant also argues that when the trial court took into consideration facts other than whether the applicable Ohio Department of Health standards were followed, the court impermissibly supplanted the General Assembly's conclusive determination that a breath testing procedure conducted in a manner approved by the Ohio Department of Health is admissible.
 {¶ 18} In response, appellee argues that in order to avail itself of the presumption that alcohol breath tests are generally reliable, appellant was required to show that the machine used was in proper working order at the time that appellee's test was conducted. Appellee states that "significant problems with the machine and the testing process" were revealed during the hearing on the motion to suppress, and appellant was unable to offer evidence to overcome the conclusion that the test was unreliable. (Brief of appellee, 3.) Thus, argues appellee, it was not an abuse of discretion for the trial court to exclude the test result.
 {¶ 19} In Daubert, the United States Supreme Court addressed the issue of when expert scientific testimony is relevant and reliable. The court held that courts should consider several factors when evaluating the reliability of scientific evidence, including whether the theory or technique has been tested, whether it has been subject to peer review, whether there is a known or potential rate of error, and whether the methodology has gained general acceptance. Id. at 593-594. The inquiry is flexible, but "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595.
 {¶ 20} The court in Daubert did not apply this new test to the facts of that case, but reversed the grant of summary judgment and remanded the case to the district court for further analysis of the plaintiffs' scientific evidence. But in Millerv. Bike Athletic (1998), 80 Ohio St.3d 607, 687 N.E.2d 735, the other case upon which the trial court relied, the Supreme Court of Ohio did apply the Daubert standard to the facts. In doing so the court stated that the determinative issue was "whether the principles and methods [that the plaintiffs' expert witness] employed to reach his opinion are reliable, not whether hisconclusions are correct." Id. at 611. (Emphasis added.)
 {¶ 21} Decades ago, in the case of Westerville v.Cunningham (1968), 15 Ohio St.2d 121, 44 O.O.2d 119,239 N.E.2d 40, the Supreme Court of Ohio acknowledged that alcohol breath-testing devices "are today generally recognized as being reasonably reliable on the issue of intoxication when conducted with proper equipment and by competent operators." Id. at 123. More recently, the Ohio General Assembly has legislatively determined that various alcohol determinative testing apparatuses are generally reliable and admissible. Section 4511.19 of the Ohio Revised Code provides, in pertinent part:
(D)(1) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation.
* * *
The bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 [3701.14.3] of the Revised Code.
 {¶ 22} In the case of State v. Vega (1984),12 Ohio St.3d 185, 12 OBR 251, 465 N.E.2d 1303, the Supreme Court of Ohio held that R.C. 4511.19 represents a legislative determination that certain breath testing devices are generally reliable. This determination, the court explained, means that the statute has replaced the common law foundational requirements for admissibility. The court also explained that the foregoing passage of R.C. 4511.19 means that the legislature has delegated to the Director of the Ohio Department of Health, not the courts, the discretionary authority to determine which tests and procedures are generally reliable and thus admissible in a prosecution under the statute. Therefore, the Vega court held, "an accused may not make a general attack upon the reliability and validity of the breath testing instrument[.]" Id. at 190.
 {¶ 23} Since Vega, the Supreme Court of Ohio has repeatedly and consistently held that, "[t]he admissibility of test results to establish alcoholic concentration under R.C. 4511.19 turns on substantial compliance with ODH regulations." Defiance v. Kretz
(1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32. See, also, State v.French (1995), 72 Ohio St.3d 446, 451, 650 N.E.2d 887; State v.Plummer (1986), 22 Ohio St.3d 292, 294, 22 OBR 461,490 N.E.2d 902. This holding recognizes that the General Assembly has legislatively provided for the admission into evidence of alcohol test results, including breath tests, from tests conducted upon those accused of violating R.C. 4511.19, so long as such tests were conducted in accordance with procedures adopted by the Director of the Ohio Department of Health.
 {¶ 24} This legislative mandate for admissibility obviates the need for trial courts to determine admissibility based upon reliability of the processes and methods underlying the use of breath testing machines. It follows, then, that because theDaubert inquiry involves only determinations as to the reliability of the principles and methods upon which a particular scientific test result is based, the legislative mandate recognized in Vega forestalls the need for any Daubert
analysis in cases such as the present one. That is why we agree with the holding of the Fifth Appellate District that, pursuant to Vega, "an attack on the accuracy and credibility of breath test devices in general is prohibited. Therefore, there is no need to determine the reliability of the machine under aDaubert * * * standard." State v. Birkhold (Apr. 22, 2002), 5th Dist. No. 01CA104, 2002-Ohio-2464, ¶ 19.
 {¶ 25} For this reason, we agree with appellant's position that the trial court erred in applying the Daubert case to appellee's motion to suppress the BAC Datamaster results. This does not mean, however, that appellee has no avenue of attack as to the specific results of his test. It is important to note that the Vega court said, "[t]here is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of the operator. * * * Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed." Vega, supra, at 189.
 {¶ 26} In accord with this notion, this court has held that, though a defendant may not mount a challenge to the general accuracy and reliability of the breath testing machine in question, he "may endeavor to show something went wrong with his test and that, as a consequence, the result was at variance with what the approved testing process should have produced."Columbus v. Day (1985), 24 Ohio App.3d 173, 174, 24 OBR 263,493 N.E.2d 1002. See, also, Whitehall v. Weese (Oct. 17, 1995), 10th Dist. No. 95APC02-169.
 {¶ 27} This court was squarely presented with the question of the appropriate manner and timing of such an attack in the case of Columbus v. Caynor (1996), 111 Ohio App.3d 394,676 N.E.2d 540. In that case, the defendant argued that the trial court had erred in refusing to suppress the results of his BAC Verifier test because he had raised the issue as to whether the machine was working properly at the time that law enforcement officers administered his test. Specifically, he had presented evidence at the suppression hearing that the machine's printout of his test result indicated an unintelligible "19:2" where the year "1995" should have appeared to indicate the date the test was conducted.
 {¶ 28} Like appellee in the present case, the defendant inCaynor argued that the breath test result is inadmissible when the accused raises an issue as to whether the machine malfunctioned or was otherwise not in good working order at the time of the defendant's test and the prosecution produces no affirmative evidence to rehabilitate the machine's reliability. We rejected that argument and adhered to controlling precedent that instructs, "[t]he admissibility of test results to establish alcoholic concentration under R.C. 4511.19 turns on substantial compliance with ODH regulations." Id. at 397, quoting Kretz,
supra, at 3. We held that in the absence of any evidence that Ohio Department of Health regulations had not been followed, the test result was admissible, and the possible malfunctioning of the machine on the date of the defendant's test was irrelevant to admissibility.
 {¶ 29} In the case of State v. Edwards, 107 Ohio St.3d 169,2005-Ohio-6180, 837 N.E.2d 752, the Supreme Court of Ohio approved of this court's holding in Caynor. In doing so, the court stated, "a defendant at trial may challenge breath-test results on grounds other than that the results were illegally obtained because they were obtained in noncompliance with the [Department of Health] director's rules. For example a defendant may argue at trial that the particular device failed to operate properly at the time of testing." Id. at ¶ 19.
 {¶ 30} The foregoing precedent resolves the issue presented in this case, to wit: whether the trial court erred in suppressing the results of appellee's BAC Datamaster breath test on the grounds that evidence may suggest that the machine was not in proper working order on the date of appellee's test. We find that the trial court did err.
 {¶ 31} In a case such as this, where the record of the suppression hearing contains no evidence of noncompliance with any applicable regulation of the Ohio Department of Health, evidence that the accused seeks to offer for the purpose of showing that the machine was not in good working order on the date of his breath test is irrelevant to the admissibility of the test result. As such, the trial court erred when it suppressed appellee's breath test result.
 {¶ 32} Accordingly, we sustain appellant's sole assignment of error, reverse the judgment of the Franklin County Municipal Court and remand this cause to that court for further proceedings.
Judgment reversed; cause remanded.
McGrath and Travis, JJ., concur.