[Cite as *State v. Tenney*, 2012-Ohio-3290.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24999 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 10-TRC-19395 |
| v. | : | |
| | : | |
| ROBERT R. TENNEY | : | (Criminal Appeal from |
| | : | Dayton Municipal Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of July, 2012.

. . . . . . . . . . .

JOHN DANISH, Atty. Reg. #0046639, and STEPHANIE COOK, Atty. Reg. #0067101, by
MATTHEW KORTJOHN, Atty. Reg. #0083743, Dayton Municipal Prosecutor's Office, 335
West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

MARK A. DETERS, Atty. Reg. #0085094, 1800 Lyons Road, Dayton, Ohio 45458
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1}     The State of Ohio appeals from a municipal-court order suppressing the result

of the alcohol-concentration breath test given to the defendant-appellee, Robert Tenney. By

law, a breath-test result is admissible if the state establishes that the test was performed in at least substantial compliance with the procedures established by the state director of health. One of the established procedures is the oral-intake requirement. It requires that, before performing a breath test, the subject be observed for 20 minutes to prevent him from ingesting anything. The municipal court concluded that the state failed to prove substantial compliance with the oral-intake requirement. We disagree and reverse.

{¶ 2} University of Dayton Police Officer Kyle Watts pulled over Tenney for erratic driving. Tenney failed several field-sobriety tests, so Watts arrested him for operating a vehicle while under the influence of alcohol. Watts put Tenney in his patrol car and brought him to the Kettering Police Department (KPD). There, Tenney was given a breath test by Kettering Police Officer Brad Lambert, who is certified to perform such a test. The test result showed that Tenney's breath alcohol concentration was well above the legal limit. Tenney was charged with one count of operating a vehicle without reasonable control and two counts of operating a vehicle under the influence of alcohol.

{¶ 3} Tenney moved to suppress the breath-test result.[1] At a hearing on the motion, Tenney testified that he burped that night. It was his position that the burp invalidated the test result. Officer Watts testified that at least 20 minutes elapsed between the time he put Tenney in his cruiser and the time that Officer Lambert performed the breath test. Watts further testified that during those 20 minutes he did not see Tenney ingest anything. Watts testified that, because he did not think it was important, he did not remember whether Tenney burped. The municipal court concluded that the state failed to prove substantial compliance with the

---

[1] Tenney also moved to suppress several other pieces of evidence, including the results of the field-sobriety tests.

oral-intake requirement. Therefore the court suppressed the breath-test result.[2]

{¶ 4}    The state appealed[3] and now assigns a single error to the municipal court's suppression order. The appeal of a suppression order presents a reviewing court with a mixed question of fact and law. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. On questions of fact the reviewing court defers to the trial court's sufficiently supported findings, accepting them as true. *Id*. Questions of law, though, the court reviews de novo. *Id*. Generally, whether to admit evidence is within a trial court's discretion. *See* Evid.R. 104(A). The admission of a breath-test result, though, is controlled by law. *State v. Massie*, 2d Dist. Greene No. 2007 CA 24, 2008-Ohio-1312, ¶ 16 (saying that "'the General Assembly has legislatively provided for the admission into evidence of alcohol test results, including breath tests, from tests conducted upon those accused of violating R.C. 4511.19,'" quoting *State v. Luke*, 10th Dist. Franklin No. 05AP-371, 2006-Ohio-2306).

{¶ 5}    R.C. 4511.19 provides that a breath-test result is admissible if the breath test was performed in compliance with the procedures established by the state director of health. R.C. 4511.19(D)(1)(b); *Massie* at ¶ 16.[4] Compliance need not be strict; it need only be substantial. *Burnside* at ¶ 27. The state has the initial burden of proving substantial compliance with the established breath-test procedures. *Id*.  If it carries this burden, the breath-test result is presumed admissible. The burden then shifts to the defendant to rebut the

---

[2] The court also suppressed the result of a field-sobriety test, concluding that the state failed to show substantial compliance with national highway traffic safety administration (NHTSA) standards for this test. That issue is not raised in this appeal.

[3] The state appealed under R.C. 2945.67, which permits it to immediately appeal an order suppressing evidence.

[4] *See generally* R.C. 3701.143 (saying that for purposes of R.C. 4511.19 the health director determines the "techniques or methods" for analyzing a person's breath to ascertain alcohol concentration and approves the "satisfactory techniques or methods").

presumption by showing prejudice from substantial, rather than strict, compliance. *Id*. at ¶ 24.

{¶ 6}    The procedures for performing a breath test are found in an "operational checklist," Ohio Adm.Code 3701-53-02(D), which "provides the 'methods approved by the director of health' for the operation of the [instrument being used]," *Bolivar v. Dick*, 76 Ohio St. 3d 216, 218, 667 N.E.2d 18 (1996). The first item on the operational checklist for the instrument used in this case (a BAC DataMaster) is the oral-intake requirement, which states, "Observe subject for twenty minutes prior to testing to prevent oral intake of any material." (Plaintiff's Exhibit 2). The municipal court held that the state failed to prove that Tenney's breath test was performed in substantial compliance with the oral-intake requirement,[5] saying that "the State failed to demonstrate that the Defendant did not ingest any material in the twenty-minutes preceding his breath test that would affect his results. The Officer, who observed the Defendant for the twenty-minute period, testified that he did not remember whether the defendant belched or burped prior to his test because he did not think it was important. " (Entry Suppressing Results of BAC Test and Walk and Turn Test (Jan. 5, 2012)). The decision then proceeds to reference the defendant's testimony that he burped. Consequently we can only conclude from the trial court's reasoning that the defendant's burp was the rationale for finding a lack of substantial compliance.

---

[5] The court wrote that the state failed to prove that the breath test was performed in substantial compliance with "NHTSA standards." The parties agreed at oral arguments that the reference to NHTSA standards is likely a mistatement. Neither R.C. 4511.19(D)(1) nor Ohio Adm.Code 3701-53-02 refers to NHTSA standards. The court likely mixed    the admissibility of a breath-test result with the admissibility of a field-sobriety-test result. The admissibility of the latter is controlled by division (D)(4) of section 4511.19, which provides that a field-sobriety-test result is admissible if the test was performed in substantial compliance with NHTSA standards. We do not perceive this stray reference to NHTSA standards to be of consequence in the court's decision or our review. The sole issue is whether the State proved 20 minutes of observation.

**{¶ 7}** The State argues that the evidence supports that the officer substantially complied with the regulations. Tenny argues that Watts could not have properly observed him during the drive to the KPD, or while at the police station, and that Watts was not the trained and certified operator. We agree with the State. Substantial compliance only requires evidence that during the 20 minutes before the breath test the defendant did not ingest anything that might skew the test result. *State v. Adams*, 73 Ohio App. 3d 735, 740, 598 N.E.2d 176 (2d Dist.1992), citing *State v. Steele*, 52 Ohio St.2d 187, 370 N.E.2d 740 (1977). "A witness who testifies to that foundational fact is not required to show that the subject was constantly in his gaze, but only that during the relevant period the subject was kept in such a location or condition or under such circumstances that one may reasonably infer that his ingestion of any material without the knowledge of the witness is unlikely or improbable." *Id*. Watts testified that he removed all items from Tenney's person before placing him in the cruiser. Watts said that he checked the backseat of his patrol car before placing Tenney inside to ensure that no contraband had been left. Watts also testified that, before placing him in the car, he handcuffed Tenney's hands behind his back. During the drive to KPD, Watts said, he looked at Tenney through his rearview mirror every 15-30 seconds. There is nothing in this testimony that would allow an inference that Tenny ingested something and the testimony is legally sufficient, under *Adams*, that ingestion was unlikely or improbable. Furthermore, in *Adams,* this court stated that once the inference of unlikely or improbable ingestion is shown, "[t]o overcome that inference, the accused must show that he or she did, in fact, ingest some material during the twenty-minute period." Tenny never presented any evidence that he did in fact ingest something.

**{¶ 8}** The state challenges the municipal court's conclusion that Tenney's burp renders the test result inadmissible. The court cited Tenney's testimony "that he remembered burping before taking his breath test because his burps tasted like the Vietnamese food he had eaten." (Entry Suppressing Results of BAC Test and Walk and Turn Test (Jan. 5, 2012)). The court then said that "[m]aterial brought up from the stomach by belching or burping can produce an artificially elevated test result," citing for this proposition our decision in *State v. Massie* and a treatise. (*Id.*) However, the sum of Tenney's burp testimony is this:

Q: Did you burp twenty minutes prior to taking the breath test?

A: As Officer Watts does [Watts testified earlier], I burp fairly often whether or not I'm drinking or not as in I haven't eaten or drank at all today and I burped four or five times so far today.

Q: Did you burp that night?

A: Yes.

Q: Why do you remember burping that night?

A: Because it tasted like Vietnamese food; it was the first time I had Vietnamese food since I moved from L.A.

Q: I have no further questions.

(Tr. 138). We note that Tenney does not say when he burped, in particular, whether it was during the 20 minutes before the breath test was performed. Also, Tenney offers no details about the nature of his burp. In particular, he does not say that any material or liquid was brought up from his stomach. More importantly, though, is the problem with the municipal court's use of the proposition that material brought up from the stomach can skew a

breath-test result. The record does not contain any evidence that Tenny regurgitated anything that he then ingested during the observation period.

**{¶ 9}** We do not find support for the trial court's decision from our opinion in *State v. Massie*. The only mention of burping in *Massie* is found in a quotation of the trial court's comments on a memorandum from the Bureau of Alcohol and Drug Testing requiring that a new 20-minute observation period be initiated any time a testing instrument indicated that an "invalid sample" had been taken.[6] The *Massie* defendant argued that this requirement was not followed in his case. But the invalid sample had nothing to do with burping: our opinion does not refer to any burping (or similar such) evidence. Thus *Massie* does not help resolve the issue in the present case.

**{¶ 10}** We recognize it may be true that material brought up from the stomach may produce an erroneously elevated test result, although here there is no evidence of regurgitation. The treatise cited by the municipal court explains that alcohol in the mouth can produce an erroneously high breath-test result. To avoid this, "[t]he typical procedure for administering a breath test involves watching the subject for 15 to 20 minutes to ensure that he puts nothing in his mouth." 2 Erwin, *Defense of Drunk Driving Cases*, Section 18.02[2][a] (3d Ed.Matthew Bender 2012). But the mouth-alcohol problem can also result if stomach contents are brought up, because "the concentration of alcohol in the gastric fluids may be much higher than that in the blood or mouth fluids." *Id*. Consequently, "[i]f prior to complete absorption, any material

---

[6]"While there is, admittedly, an initial 20-minute observation period, that's to make certain that the subject doesn't, in fact, ingest anything or have any problems that we've talked about, vomiting and belching and burping and so forth. As long as the machine was properly clearing itself before the second and third tests were given so that there was no residual air left in the machine * * * there is no reason in the world that the third test would not have been accurate in accordance with the design limits of the machine." *Massie* at ¶ 35.

comes up from the stomach into the oral cavity, the breath will become contaminated with this material" and a test result may be erroneously high. *Id*. But the treatise points out that "[t]he [testing] procedure may or may not state that the observer is to watch to see if the subject belches, burps, or otherwise brings material up from his stomach." *Id*. at Section 18.02[2][a]. The procedure established by Ohio's health director does not require observation for burps. The Ohio requirement states only that a subject be observed to prevent oral intake. The burp testified to by the defendant did not describe any oral intake. Therefore, under Ohio law, the defendant's burp does not render a breath-test result inadmissible.

{¶ 11} This is not to say that a defendant cannot use the fact that he burped to challenge a breath-test result. But such a challenge is not to the result's admissibility but to its weight, specifically, its reliability. A defendant "'may endeavor to show something went wrong with his test and that, as a consequence, the result was at variance with what the approved testing process should have produced.'" *Massie* at ¶ 18, quoting *Luke*, 2006-Ohio-2306, at ¶ 26. Of course, expert testimony is likely needed to prove that the burp affected the reliability of the breath-test result.

{¶ 12} Tenney makes an alternative argument that the test should be inadmissible because Watts, the 20-minute observer, was not certified to perform breath tests. We disagree. "[T]he focus of this item [the first item on the operational checklist, the oral-intake requirement] is 'to prevent oral intake of any material' and not to ensure that a certified operator does the observing." *Bolivar*, 76 Ohio St.3d 216, 218. Thus it is not necessary that the observer be certified to perform the test. *Id*. (holding that "[w]hen two or more officers, one of whom is a certified operator * * *, observe a defendant continuously for twenty

minutes or more prior to the administration of a breath-alcohol test, the observation requirement of the * * * operational checklist has been satisfied").

{¶ 13} The state here proved that the procedures for performing a breath test, including the oral-intake requirement, were substantially complied with. Tenney did not prove that he was prejudiced by something less than strict compliance. Therefore, as a matter of law, the result of Tenney's breath test is admissible.

{¶ 14} The sole assignment of error is sustained.

{¶ 15} That part of the municipal court's order suppressing the breath-test result is reversed. This case is remanded for further proceedings.

. . . . . . . . . . . . .

FAIN and DONOVAN, JJ., concur.

Copies mailed to:

John Danish / Stephanie Cook
Matthew Kortjohn
Mark A. Deters
Hon. Carl Sims Henderson