[Cite as *State v. Nicholson*, 2013-Ohio-639.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0063** |
| ZACHARY S. NICHOLSON, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2012 TRC 05002.

Judgment: Reversed and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*William D. Lentz,* Sandvoss & Lentz, 228 West Main Street, P.O. Box 248, Ravenna, OH 44266-0248 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, the state of Ohio, appeals the judgment of the Portage County Municipal Court, Ravenna Division, granting the motion to suppress of appellee, Zachary S. Nicholson, to exclude evidence of the result of an Intoxilyzer 8000 test. At issue is whether the trial court erred in requiring the state to present evidence of the reliability of the Intoxilyzer 8000 as a predicate for the admission of the result of Nicholson's test. For the reasons that follow, we reverse and remand.

{¶2} On April 14, 2012, Nicholson was stopped by police for failing to have an illuminated rear license plate while driving on Summit Street. Nicholson was arrested for driving under the influence of alcohol. The result of his Intoxilyzer 8000 breath test revealed Nicholson's blood-alcohol concentration was .111, which is over the legal limit. As a result, he was cited for driving under the influence, in violation of R.C. 4511.19(A)(1)(a), and driving with a prohibited blood-alcohol concentration, in violation of R.C. 4511.19(A)(1)(d). He was also cited for not having an illuminated rear license plate, in violation of R.C. 4513.05. Nicholson pled not guilty.

{¶3} On May 29, 2012, Nicholson filed a motion to suppress and/or motion in limine to exclude the result of his breath test. On the same date, he filed a separate motion in limine requesting the state be required to present evidence regarding the reliability of breath-test results obtained by the Intoxilyzer 8000.

{¶4} In response, the state filed a brief arguing that, pursuant to *State v. Vega*, 12 Ohio St.3d 185 (1984), the state was not required to present evidence to establish the general reliability of the Intoxilyzer 8000 prior to the state's introduction of the machine's breath-test result.

{¶5} By its judgment, dated June 20, 2012, the trial court granted Nicholson's motion to suppress. The court found that, pursuant to its previous ruling in *State v. Johnson*, Case No. R 11 TRC 4090, the state was required to produce evidence to convince the court that the test result from the Intoxilyzer 8000 is reliable and thus admissible at trial. The court found that because the state has taken the position that no expert testimony is required at the motion hearing, Nicholson has been denied the opportunity to challenge the evidence of his guilt in violation of his due process rights. As a result, the court ordered that the result of Nicholson's breath test from the

2

Intoxilyzer 8000 is not admissible at his trial. The court stated it would set the remaining charges under R.C. 4511.19(A)(1)(a) and R.C. 4513.05 for trial.

{¶6} The state filed a motion to stay the court's judgment pending appeal, which the trial court granted. The state now appeals the trial court's ruling on Nicholson's motion to suppress, asserting one assignment of error. For its sole assigned error, the state alleges:

{¶7} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶8} As a preliminary matter, the state argues that, while Nicholson referred to his motions at least in part as a motion in limine, a ruling on which is generally not a final, appealable order, in effect his motion was a motion to suppress evidence, and the court's ruling granting same was a final order. In contrast, Nicholson argues that the court's ruling on his motion to suppress was essentially a ruling on a motion in limine. Thus, he argues the court's ruling was merely a preliminary evidentiary ruling and not a final order. This court in *State v. Davis*, 11th Dist. No. 2008-L-021, 2008-Ohio-6991, stated:

{¶9} The Supreme Court of Ohio has explained that "any motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed, is, in effect, a motion to suppress. The granting of such order is a final order and may be appealed pursuant to R.C.

3

2945.67 and Crim.R. 12(J) [since renumbered as Crim.R. 12(K)]."

*Id.* at ¶22, quoting *State v. Davidson*, 17 Ohio St.3d 132 (1985), syllabus.

**{¶10}** Here, the trial court's judgment granting Nicholson's motion to suppress restricted the state in the presentation of Nicholson's breath-test result, and, thereby, rendered the state's proof with respect to the per-se OVI charge so weak in its entirety that any reasonable possibility of effective prosecution had been destroyed. As a result, the court's ruling granting Nicholson's motion to suppress is a final, appealable order.

**{¶11}** Turning now to the merits of the state's appeal, "[a]ppellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. *Id.* Thereafter, the appellate court must determine, without deference to the trial court, whether the applicable legal standard has been met. *Id.* Thus, we review the trial court's application of the law to the facts de novo. *State v. Holnapy*, 194 Ohio App.3d 444, 2011-Ohio-2995, ¶28 (11th Dist.). Here, no evidence was presented. Instead, the court applied the law without making any factual findings. Thus, the court's ruling was made as a matter of law, which we review de novo. *Id.*

**{¶12}** The state argues that it was not required to present expert testimony to demonstrate the general scientific reliability of the Intoxilyzer 8000 before introducing the result of Nicholson's breath test at trial. In support, the state argues that the legislature delegated this determination to the director of health and that the Supreme Court of Ohio in *Vega, supra*, upheld this delegation of authority.

4

{¶13} "R.C. 3701.143 authorizes the Director of Health to determine suitable methods for breath alcohol analysis." *Vega*, *supra*, at 187. That section provides:

{¶14} For purposes of section[ ] * * * 4511.19 * * * of the Revised Code, *the director of health shall determine * * * techniques or methods* for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in [his] breath * * *. The director shall approve satisfactory techniques or methods * * *. (Emphasis added.)

{¶15} Further, R.C. 4511.19(D)(1)(b) provides:

{¶16} In any criminal prosecution * * * for a violation of * * * this section * * *, the court may admit evidence on the concentration of alcohol * * * in the defendant's * * * breath * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn * * *. * * *

{¶17} The bodily substance withdrawn under division (D)(1)(b) of this section *shall be analyzed in accordance with methods approved by the director of health.* (Emphasis added.)

{¶18} Pursuant to R.C. 3701.143, the director of health promulgated Ohio Adm.Code 3701-53-02(A), which provides that (1) the BAC DataMaster, the BAC DataMaster K, the BAC DataMaster cdm; (2) the Intoxilyzer 5000 series 66, 68, and 68 EN; and (3) the Intoxilyzer 8000 (OH-5) are approved as evidential breath-testing instruments for use in determining whether a person's breath contains a concentration of alcohol prohibited by R.C. 4511.19.

{¶19} Thus, the General Assembly gave the director of health the authority to choose breath-testing instruments, and, pursuant to Ohio Adm.Code 3701-53-02, the director approved the Intoxilyzer 8000 as a breath-testing instrument.

{¶20} "Administrative rules enacted pursuant to a specific grant of legislative authority are to be given the force and effect of law." *Doyle v. Ohio Bureau of Motor Vehicles*, 51 Ohio St.3d 46 (1990), paragraph one of the syllabus. Further, "the Director of Health is delegated the authority to adopt regulations for the use of [breath-testing] instruments. Once promulgated, these regulations are to be given the force and effect of law. *State v. Yoder*, 66 Ohio St.3d 515, 519 (1993) (Wright, J., dissenting), citing *Doyle*, *supra*. Thus, Ohio Adm.Code 3701-53-02, which approved the Intoxilyzer 8000 as an evidential breath-testing instrument, has the force and effect of law.

{¶21} In *Vega*, *supra*, the defendant argued that he should not be bound by the health director's determination that the intoxilyzer is generally a reliable breath-testing instrument. The Supreme Court stated that in making this argument, Vega had misconstrued the impact of R.C. 4511.19. *Id.* at 188. The Supreme Court stated that R.C. 4511.19 represented a legislative determination that breath-testing devices adopted by the Director of the Ohio Department of Health are generally reliable. *Id.*, citing McCormick, Evidence (2 Ed.Cleary Ed.1972), 511, 513. The court further stated that, "[i]n Ohio, the *General Assembly has legislatively provided for the admission of various alcohol determinative tests in R.C. 4511.19.*" (Emphasis added.) *Vega* at 186-187. Thus, the Supreme Court of Ohio stated that the judiciary must recognize the legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts agree. *Vega* at 188. The court stated that the judiciary must also recognize that R.C. 4511.19 has replaced the common law foundational requirements

for admissibility.  *Id.* at 188-189.  The Supreme Court also stated the judiciary must recognize that, in enacting R.C. 4511.19, the legislature delegated to the director of health, not the courts, "the discretionary authority" to determine which breath testing devices are reliable.  *Id.* at 189.

{¶22}  Thus, the Supreme Court of Ohio in *Vega* held that, "in light of R.C. 4511.19, an accused may not make a general attack upon the reliability * * * of a breath testing instrument."  *Id.* at 190.  The Supreme Court further held that an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyers in general."  *Id.* at 186.

{¶23}  Further, the Supreme Court in *Vega* stated:  "There is no question that the accused may * * * attack the reliability of the *specific testing procedure and the qualifications of the operator.* * * * Defense expert testimony as to testing procedures at trial *going to weight rather than admissibility is allowed.*"  *Id.* at 189.  (Emphasis added.)

{¶24}  The Supreme Court reaffirmed its holding in *Vega* in *State v. Tanner*, 15 Ohio St.3d 1 (1984), and applied it to per-se OVI violations.  The court in *Tanner* held: "[t]he defendant may still challenge the accuracy of his specific test results, although *he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels.*"  (Emphasis added.) *Id.* at 6.

{¶25}  In the years following *Vega*, *supra*, the Supreme Court of Ohio reaffirmed its teaching.  For example, in 1993, the Supreme Court in *Yoder*, *supra*, stated:  "The Director of Health, *not the court*, was delegated the discretionary authority for adoption

7

of breath testing devices and the procedures for their use. *Id.* at 518, citing *Vega*, *supra*.

**{¶26}** Moreover, Ohio Appellate Districts have addressed the specific issue raised by Nicholson, i.e., whether the state is required to present expert testimony regarding the reliability of breath-testing instruments before their results are admissible. In *Dayton v. Futrell*, 2d Dist. No. CA 8615, 1984 Ohio App. LEXIS 11631 (Oct. 26, 1984), the Second District answered this question in the negative, stating:

> **{¶27}** The [Supreme Court in *Vega*] held that the reliability and admissibility of [breath] tests * * * has been legislatively determined and that the accused may not make a general attack upon the reliability and validity of the breath testing instrument. *The judiciary must take notice that such tests, properly conducted, are reliable irrespective of disagreements among experts and that the results of such tests are admissible.* Accordingly, *judicial notice* of this factor dispenses with the necessity for expert testimony by the state in chief for the efficiency of the intoxilyzer machine. *Id.* at *3-*4. (Emphasis added.)

**{¶28}** More recently, in *State v. Luke,* 10th Dist. No. 05AP-371, 2006-Ohio-2306, the defendant filed a motion to suppress the results of his BAC Datamaster breath test. In its entry granting the defendant's motion to suppress, the trial court explained that it was suppressing the test results "pursuant to the court's 'gatekeeper' function, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)." In holding that the trial court erred in applying *Daubert* in the context of the defendant's motion to suppress, the Tenth District stated:

8

{¶29} * * * [T]he General Assembly has legislatively provided for the admission into evidence of alcohol test results, including breath tests, from tests conducted upon those accused of violating R.C. 4511.19, so long as such tests were conducted in accordance with procedures adopted by the Director of the Ohio Department of Health.

{¶30} *This legislative mandate for admissibility obviates the need for trial courts to determine admissibility based upon reliability of the processes and methods underlying the use of breath testing machines.* It follows, then, that because the *Daubert* inquiry involves only determinations as to the reliability of the principles and methods upon which a particular scientific test result is based, *the legislative mandate recognized in Vega forestalls the need for any* Daubert *analysis* in cases such as the present one. That is why we agree with the holding of the Fifth Appellate District that, pursuant to *Vega*, "an attack on the accuracy and credibility of breath test devices in general is prohibited. Therefore, *there is no need to determine the reliability of the machine under a* Daubert * * * *standard.*" *State v. Birkhold*, 5th Dist. No. 01CA104, 2002-Ohio-2464, ¶19. *Luke*, *supra*, at ¶23-24. (Emphasis added.)

{¶31} Nicholson argues the state was required to establish by expert testimony the reliability of the Intoxilyzer 8000 before his test result could be admitted at trial. In contrast, the state argues that it was not required to present evidence of the machine's reliability due to the legislative determination in R.C. 4511.19 that breath-testing

9

instruments approved by the Ohio Department of Health, including the Intoxilyzer 8000, are reliable.

{¶32} As noted above, the court in *Vega* prohibited a "*general* attack on the reliability * * * of a breath instrument." (Emphasis added.) This holding thus allows for a *specific* challenge to the reliability of the Intoxilyzer 8000. Here, Nicholson essentially alleged in his motion in limine that this device is generally unreliable. He thus did not present a specific challenge to the Intoxilyzer 8000, but rather, made a general attack.

{¶33} Further, a motion to suppress must state its legal and factual bases with sufficient particularity to put the prosecutor and the trial court on notice of the issues to be decided. *State v. Perl*, 11th Dist. No. 2006-L-082, 2006-Ohio-6100, ¶15. In *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus, the Supreme Court of Ohio held that the defendant's motion to suppress was sufficient when it "stated with particularity the statutes, regulations and constitutional amendments she alleged were violated, set forth some underlying factual basis to warrant a hearing, and gave the prosecutor and court sufficient notice of the basis of her challenge." Here, Nicholson's motion to suppress and motion in limine provided no legal or factual grounds in support. Thus, the state had no notice of any alleged specific defects of the Intoxilyzer 8000, making it virtually impossible for the prosecutor to defend the motions.

{¶34} Since the General Assembly has legislatively determined that the Intoxilyzer 8000 is reliable, it must be presumed this device is reliable. The Supreme Court of Ohio in *Yoder, supra,* acknowledged that director-approved breath-testing instruments, such as the Intoxilyzer 8000, are presumed to be reliable. The court in *Yoder* stated: "We cannot undercut the department's rulemaking authority * * *. The Director of Health, not the court, was delegated the discretionary authority for adoption

10

of breath testing devices * * *. *Vega*, [*supra*, at] 189. * * * [I]n promulgating this regulation, it must be *presumed that the Director of Health acted upon adequate investigation * * *. We must defer to the department's authority and we may not substitute our judgment for that of the Director of Health.*" (Emphasis added.) *Yoder, supra*, at 518. As a result, the state did not have the burden to produce evidence of the machine's reliability as a predicate for presenting Nicholson's breath-test results. To the contrary, because the instrument is presumed reliable, Nicholson had the burden to produce evidence that the Intoxilyzer is not reliable. This he failed to do.

**{¶35}** Moreover, Nicholson argues that the state was required to comply with *Daubert, supra*, and establish by expert testimony the reliability of the Intoxilyzer 8000 before his test result could be admitted at trial. However, in light of the Second District's holding in *Dayton, supra*, and the Tenth District's holding in *Luke, supra*, we do not agree.

**{¶36}** As noted above, with respect to a judgment granting a motion to suppress, an appellate court reviews a court's application of the law de novo. *See e.g. State v. Holnapy, supra*, at ¶28. By requiring the state to go forward with evidence of the machine's reliability, the trial court disregarded the legal prohibition on general, unparticularized challenges in motions to suppress, as well as the legislative presumption of reliability concerning the Intoxilyzer 8000. The trial court therefore erred, as a matter of law, in requiring the state to make this initial showing.

**{¶37}** We thus conclude the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's reliability and in granting Nicholson's motion to suppress; further, pursuant to these erroneous rulings, the trial court erred in excluding

11

the results of Nicholson's breath test with no evidence to overcome the presumptive reliability of the Intoxilyzer 8000's results.

{¶38} In light of *Vega,* as well as the validity of the legislative presumption, once the prosecution has demonstrated an approved breath-testing device was used, a defendant may make specific challenges to the reliability of his or her breath-test results. In this case, it is undisputed that the Intoxilyzer 8000 is an approved device. On remand, therefore, Nicholson is entitled, but has the burden of production, to specifically challenge the results of his breath test.

{¶39} For the reasons stated in this opinion, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and this matter is remanded to the trial court for further proceedings as set forth in this opinion.


DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,
THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶40} I concur in the essential judgment of this court: the Intoxilyzer 8000 "must be presumed * * * reliable"; "the state did not have the burden to produce evidence of the machine's reliability as a predicate for presenting [appellee's] breath test results"; the appellee may make "a *specific* challenge to the reliability of the Intoxilyzer 8000," but bears "the burden of production, to specifically challenge the result of his breath test."

12

{¶41} I take exception with the majority's assertion that Nicholson "did not present a specific challenge to the Intoxilyzer 8000, but rather, made a general attack." The converse would be more accurate: Nicholson presented a specific challenge to the Intoxilyzer 8000, but did not make a general attack.

{¶42} Nicholson's Motion to Suppress and/or Motion in Limine sought the suppression of his breath test results on the grounds that the "instrument(s) employed to analyze defendant's breath * * * were not in proper working order, and/or the operator of said instrument(s) did not have the necessary qualifications to operate it, and/or said analysis was not performed according to the regulations set forth by the State Department of Health." More specifically, "[t]he breath testing machine was incorrectly calibrated per O.A.C. Sec. 3701-53-04. State v. F[a]rris, (1989), 62 Ohio App. 3d 189." Contrary to the municipal court's Journal Entry, nowhere in the Motion is it alleged that the Intoxilyzer 8000 is generally unreliable or that the State bore the burden demonstrating its scientific reliability pursuant to *State v. Johnson*, Portage County Municipal Court Case R 11 TRC 4090, unreported.

{¶43} In a pretrial motion to suppress evidence, the movant bears the burden of "stat[ing] with particularity the grounds upon which it is made." Crim.R. 47. This burden is distinct from the burden to produce evidence, which the majority places upon defendants when challenging the reliability of the machine, and which the State typically bears in a pre-trial motion to suppress. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 24 ("[a]fter a defendant challenges the validity of test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health"). The majority's decision creates a potentially confusing situation where the

13

parties will have to determine who bears the burden of production on which issues, depending on how the arguments are characterized.

{¶44} In *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), the Ohio Supreme Court envisioned the criminal trial as the appropriate forum for the defendant to introduce expert testimony challenging the results of his or her breath test results with such testimony going to the weight rather than the admissibility of the evidence. *Id.* at 189. At trial, such testimony could be presented to impeach the State's witnesses or as part of the defense case. *State v. Mongeau*, 3rd Dist. No. 13-12-21, 2012-Ohio-5230, ¶ 23 ("[a]t trial, defense expert testimony is permissible if the testimony addresses weight rather than admissibility"). This does not foreclose a defendant, however, from presenting challenges to the Intoxilyzer at a suppression hearing, in the form of either a specific challenge to the machine's reliability or to the individual's test results.

{¶45} With these reservations, I concur in the opinion of this court.

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶46} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶47} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human

14

fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶48} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶49} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶50} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be

15

afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

**{¶51}** Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶52}** "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶53}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶54}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered

16

the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

{¶55} Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

{¶56} In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.) *Id.* at 186.

{¶57} Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the

17

case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

{¶58} Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶59} Breath tests are ""* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶60} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested

18

with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion*. *Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶61} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶62} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

19

{¶63} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.